[No. 8488-7-I.   Division One.   December 21, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID MARTIN ROTH, *Appellant.*

*Kafer, Good & St. Mary, Randall L. St. Mary,* and *Steven Ashlock,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *Russell Jones*

and *William T. Gissberg, Deputies,* for respondent.

CORBETT, J.—Defendant appeals his conviction of first degree murder. There are eight assignments of error.

The State presented evidence that in August 1977, the defendant confessed to his friend, Mr. Hendershott, that he had murdered a hitchhiker. Over a period of 3 days, he related the incident in some detail, telling Hendershott that he drank beer with her behind Mariner High School, he became angered when his sexual advances were rejected, he tried to appease her by offering her a peacock feather, and then strangled her with an elastic cord he had taken from his car's trunk. He elaborated by relating that he had dragged the body into the woods, emptied his rifle clip into the girl's head and then picked up the shell casings. Angered by what he had done, he admitted to then firing the rifle at his own car. Mr. Hendershott related what he had been told to Snohomish County sheriff's deputies. The body of a white female had been found by berry pickers on August 14 in a wooded area near Mariner High School, the body position and surrounding vegetation indicating the body had been dragged to that location. No shell casings were found near the body. There were multiple gunshot wounds to the head. Peacock feathers, bullet holes, shell casings and lead fragments were later found in Roth's car and elastic cords were discovered in the car trunk. A ballistic expert's testimony linked the rifle, cartridges and slugs which had been found in the Roth car with the slugs removed from the body during autopsy. When the defendant was arrested in 1979, his confession closely paralleled what Hendershott had told police and the physical evidence found at the crime scene and in the car.

Defendant assigns error to the trial court's refusal to suppress evidence found in his automobile. On August 13, 1977, the defendant was stopped for a traffic infraction while driving through the town of Gold Bar. Police had received a citizen CB report of someone "waving a rifle around" in a small park outside of town. Defendant was

observed by police driving the vehicle through town in an erratic manner. After stopping the defendant, the officer noted the odor of marijuana coming from the car and could see two roach clips in the ashtray. He arrested the defendant for possession of marijuana and found three baggies of green vegetable matter in his search of the car. The presence of the odor of marijuana and plain–view sighting of the roach clips gave the officers probable cause to believe that defendant had committed a crime. *State v. Compton,* 13 Wn. App. 863, 865, 538 P.2d 861 (1975). The search was valid as incident to a lawful arrest. Whether the officer had sufficient training to enable him to detect the odor of marijuana, challenged by the defendant, would be relevant to the weight and not the admissibility of his testimony. Considering the widespread use of marijuana, the general familiarity with the drug by most qualified officers and this officer's training and experience, it is hard to conceive that he would not recognize the odor and associated paraphernalia.

In searching the car, the officer found the rifle and ammunition that were later linked to the murder. He seized them as evidence of carrying a loaded rifle in a vehicle, RCW 77.16.250, and cited the defendant. The defendant was arrested and booked for possession of marijuana. His car was impounded to safeguard the vehicle and its contents from the risk of being left unattended on a busy interstate highway. The State showed "reasonable cause" for impoundment. *State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980). The remaining evidence in the vehicle was obtained by search warrant after the murder was discovered. The motion to suppress evidence recovered from defendant's vehicle was properly denied.

The second assignment of error is failure to suppress the confession made by defendant following his arrest. The murder investigation began in August 1977. In December 1978, Kitsap County police were informed that Roth, whose vehicle was registered in Port Orchard, was being sought by Snohomish County sheriffs for a homicide. On January 14,

1979, Kitsap County police obtained leads on defendant's place of residence and verified an outstanding bench warrant against him. On January 18, 1979, the Port Orchard police, accompanied by a Kitsap County sheriff, went to the defendant's apartment between 1 and 3 a.m., having been unable to locate him at his residence on earlier occasions. The officer pushed open the door and arrested the defendant. Defendant relies upon *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), claiming that his warrantless arrest was invalid.

■ We have held that *Payton* will not be given retroactive effect. *State v. Counts,* 27 Wn. App. 773, 776, 620 P.2d 1013 (1980). *Payton* does not apply to an arrest made under the authority of a valid warrant. Defendant argues that the warrant was not properly issued and suggests that a summons should have been issued instead of the bench warrant. The applicable court rule is JCrR 2.09(g), which provides:

> Upon a verified application by the prosecuting attorney alleging with specificity that a defendant has willfully violated a condition of his release, a court shall order the defendant to appear for immediate hearing or issue a warrant directing the arrest of the defendant for immediate hearing.

The affidavit of the prosecutor requesting the bench warrant stated that defendant had pleaded guilty to a weapons charge filed in Evergreen District Court but had failed to appear for a presentence interview and could not be located by his mother with whom he had been residing, or by his court–appointed attorney. The district court judge issued the bench warrant pursuant to the cited rule, and this was a valid cause for defendant's arrest on January 18, 1979.

Arresting officers were aware that probable cause existed to charge defendant with a violent murder. Under pre–*Payton* Washington law, Kitsap deputies were entitled to arrest the defendant based upon probable cause. *State v. Favro,* 5 Wn. App. 311, 315, 487 P.2d 261 (1971).

The defendant cites the so–called "knock and wait" stat-

ute:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other enclosure, if, after notice of his office and purpose, he be refused admittance.

RCW 10.31.040. This statute is applicable if police try to gain entry by ruse, and their use of deception is unsuccessful. *State v. Ellis*, 21 Wn. App. 123, 584 P.2d 428 (1978). Initially, the officer identified himself as "Terry." However, he was only able to get the defendant to open the door about 12 inches. When he announced that he was a police officer, the defendant started to close the door. The police entry was nonconsensual. The statute was applicable. *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980). The officer failed to advise the defendant of his purpose, *i.e.*, that the defendant was under arrest for the outstanding warrant and on suspicion of murder, before forcing the door open and entering the apartment. The police knew defendant was wanted for a violent murder. It is apparent that the defendant was aware of the officers' identity when he started to close the door. To permit closing the door would have risked further violence by loss of the element of surprise in making the arrest. This exigency excused further compliance with the rule. *State v. Neff*, 10 Wn. App. 713, 716–17, 519 P.2d 1328 (1974). Justification for the noncompliance is supported by substantial evidence. *State v. Carson*, 21 Wn. App. 318, 321, 584 P.2d 990 (1978); *State v. Coyle, supra* at 9.

■ The confession made to the Snohomish County officers was sufficiently attenuated from the arrest to be free from any taint of illegality. Nine hours elapsed before questioning by the detectives. Defendant was permitted to shower and then rest alone in his cell until the Snohomish County detectives drove him aboard the ferry on their way back to Everett. It was not until then, after defendant had been given repeated *Miranda* warnings, that he gave both an oral and written confession in elaborate detail. He

described the questioning as "friendly and businesslike." Any shock or coercive effect of the arrest had obviously dissipated and was not a factor in the taking of the statement aboard the ferry. The time lapse, opportunity to rest and reflect, and transportation to the ferry make it impossible to say that "but for" the arrest, the confession would not have been made. *State v. Byers,* 88 Wn.2d 1, 9, 559 P.2d 1334 (1977).

In his third assignment of error, defendant contends that his statement was not voluntary because of an implied threat to arrest his mother. After receiving conflicting testimony at a CrR 3.5 hearing, the trial court concluded that the confession was voluntary and not coerced. This court must make an independent review of the record to determine whether the officer's behavior was such as to overbear the defendant's will to resist and bring about a confession not freely self–determined, *State v. Gilcrist,* 91 Wn.2d 603, 607, 590 P.2d 809 (1979). The trial court is the best judge of the relative credibility of witnesses and significant weight is attached to its findings. *State v. Davis,* 73 Wn.2d 271, 282, 438 P.2d 185 (1968).

Defendant testified at the CrR 3.5 hearing that he initially would not answer questions. Defendant claims that the officers told him that if he did not answer their questions, they would get information from his mother, arrest her and send her to prison. He further testified that the officers threatened they could "get his mother for something," perhaps aiding or abetting. Defendant then confessed to the murder upon the detective's guaranty that they would leave his mother out of it. A defense psychiatrist testified that threats against his mother would affect defendant's ability to freely respond to questioning. He could not testify to a reasonable medical certainty that defendant would take such threats seriously.

The psychiatrist testifying for the prosecution found no evidence of mental illness or any unusual or abnormal emotional dependence on the mother. Detective Whitman testified:

I told him that there was no doubt in my mind that he had in fact killed the girl in 1977 and that it must be a real burden to carry. And I made reference to the fact that I believed that his mother knew that he had in fact killed the girl in 1977 and that was a burden for her to carry, too, knowing that her son had done this. It was about this time that Mr. Roth indicated that he wanted to discuss the whole incident in 1977. . . . He was very concerned about his mother. Asked me if his mother would get into any trouble. And I told him that the murder was his problem, not his mother's problem.

We agree with the trial judge that the State established by a preponderance of the evidence that defendant's confession was voluntary. The motion to suppress was thus properly denied.

█ The fourth assignment of error is denial of a motion in limine to preclude use by the prosecution of defendant's statements made to the defense psychiatrist. Defendant complains that based on the court's ruling, the defendant had to limit his testimony for fear of damaging contradiction from the psychiatrist. We do not reach the issue of whether the physician–patient privilege has been waived for the reason that a ruling upon a motion in limine is preliminary and advisory, subject to modification as the trial unfolds. The psychiatrist did not testify at the trial and there was no objection made during trial. There was no error committed by the trial court in this regard. *State v. Wilson*, 29 Wn. App. 895, 899 (1981).

█ The fifth assignment of error is denial of a motion for mistrial arising from the prosecutor's closing argument. At two points in the argument the prosecutor pointed to the defendant's failure to deny what his friend testified was confessed to him. Defendant claims that because of the ruling on his motion in limine, he was forced to adopt the trial tactic of avoiding the confessions and his participation in the crime when he testified. It is not clear that defendant would have testified differently had the subject of his confessions or statements to the psychiatrist been raised while he was on the stand. Defendant contends that the prosecu-

tor's argument is a comment on the exercise of his Fifth Amendment right, citing *State v. Reed,* 25 Wn. App. 46, 604 P.2d 1330 (1979). The defendant waived his Fifth Amendment right by offering himself as a witness. *State v. Robbins,* 15 Wn. App. 108, 114, 547 P.2d 288, *review denied,* 87 Wn.2d 1012 (1976), cited with approval in *Nessman v. Sumpter,* 27 Wn. App. 18, 21, 615 P.2d 522 (1980). Comment on his failure to mention or answer evidence presented by the State is not a comment upon his exercise of the constitutional right of silence. *See State v. Ashby,* 77 Wn.2d 33, 38, 459 P.2d 403 (1969); *State v. Young,* 89 Wn.2d 613, 621, 574 P.2d 1171 (1978).

The sixth assignment of error is failure to give the defendant's proposed instruction No. 9:

> You may not base your verdict upon mere theory or speculation. If there is nothing more reasonable to proceed upon than two or more equally reasonable inferences from a set of facts, and under only one of the inferences would the defendant be guilty, you should adopt that which admits innocence and find the defendant not guilty.

It was the defense theory that the informant friend who testified to defendant's confession had access to the use of the vehicle, weapon and ammunition, and that his involvement was equally reasonable in this circumstantial case.

■ The number of instructions to be given rests in the sound discretion of the trial court. *State v. Williams,* 22 Wn. App. 197, 200, 588 P.2d 1201 (1978). The instructions must be read as a whole and are sufficient if they permit defendant to satisfactorily argue his theory to the jury. *State v. King,* 92 Wn.2d 541, 546, 599 P.2d 522 (1979). The instructions given by the court adequately state the law as to reasonable doubt and permitted the defendant to argue his theory. It was not error to refuse the proposed instruction.

Assignment of error seven is the giving of instruction No. 9, which reads in part:

> The court instructs the jury that the law presumes that

every man intends the natural and probable consequences of his own acts . . .

Although no objection was made to the giving of this instruction, we will consider the assignment of error pursuant to RAP 2.5(a)(3), as manifest error affecting a constitutional right. Substantially the same instruction was found to be constitutional error in *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979), and *State v. Caldwell,* 94 Wn.2d 614, 617, 618 P.2d 508 (1980).

The State argues that the error is harmless. Constitutional error cannot be declared harmless unless it was "harmless beyond a reasonable doubt." *State v. Stephens,* 93 Wn.2d 186, 190, 607 P.2d 304 (1980); *State v. Caldwell, supra* at 618. An error is harmless only if it "in no way affected the final outcome of the case." *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977). The victim was killed by multiple gunshot wounds to the head. Five slugs were found within the brain cavity. A total of seven entrance wounds were found in her head. Because of putrefaction of the body, strangulation could not be confirmed. The physical evidence is, however, consistent with the defendant's confessions that he used his rifle to empty an ammunition clip into the head of the victim after strangling the victim with an elastic cord. There could be no conclusion other than an intentional killing. Therefore the jury could not have relied upon the instruction to create an irrebuttable presumption or shift the burden to the defendant to disprove intent. The instruction in no way affected the final outcome of the case and was harmless beyond a reasonable doubt. *See State v. Fernandez,* 29 Wn. App. 278, 628 P.2d 827 (1981).

The eighth assignment of error is failure to comply with CrR 3.3, the speedy trial rule. The record reflects two agreed trial continuances, each of which contains a waiver of the rule signed by the defendant and his attorney. It is not contended that the defendant did not knowledgeably waive his rights under the rule. The assignment of error is without merit.

750

Affirmed.

Swanson and Durham, JJ., concur.

Reconsideration denied February 11, 1982.

Review denied by Supreme Court April 23, 1982.