[No. 6242-2-III.   Division Three.   February 4, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DENNIS C. HANSEN, *Appellant.*

MCINTURFF, J., dissents by separate opinion.

*Lewis B. Arnold,* for appellant.

*Allen C. Nielson, Prosecuting Attorney,* for respondent.

MUNSON, J.—Dennis C. Hansen appeals his conviction of manufacturing a controlled substance, RCW 69.50.401(a). In addition to raising issues concerning the search and seizure of marijuana plants, Mr. Hansen contends the trial judge should have recused himself because he filed an affidavit of prejudice minutes before trial commenced. We affirm.

On July 15, 1983, Ferry County Deputy Sheriff Gordon Nichols responded to a fire call at Mr. Hansen's next door neighbor. The residence was located approximately 7½ miles up Lambert Creek Road. Deputy Nichols proceeded past the fire site in order to find a spot in the road wide enough to turn his vehicle around. At a small clearing, he saw a garden plot adjacent to the road, in which he noticed four marijuana plants. He backed his car down the road, exited his car, and took pictures of the garden and marijuana plants. He followed a path leading in a southerly direction from the garden to a second garden where he found four additional marijuana plants. He took photographs of the second garden, returned to his car where he collected some bags, and then retrieved the marijuana plants from both gardens.

After collecting this evidence, Deputy Nichols returned to the fire site where he learned both garden plots were on property owned by Mr. Hansen. He went to the Hansen residence, but found no one home. Another officer "impounded" the home, while Deputy Nichols went to get a search warrant. At the assessor's office, Deputy Nichols confirmed the property belonged to Mr. Hansen; he secured a search warrant for the Hansen residence.

While checking for persons in the backyard of the house, Deputy Nichols discovered a wooden box next to a tree which contained smoking pipes and green vegetable matter. He then executed the warrant for the residence and found additional marijuana and drug paraphernalia.

Minutes before selecting a jury to try Mr. Hansen on October 19, defense counsel filed an affidavit of prejudice. The judge declined to recuse himself, for various reasons, including but not limited to the inconvenience to prospective jurors then waiting for the trial to begin.

Mr. Hansen first contends his affidavit of prejudice was timely since there had been no discretionary decision made by the judge nor did the record demonstrate that the judge was preassigned to his case. RCW 4.12.050. Thus, in Mr. Hansen's view, the judge was required to recuse himself.

RCW 4.12.040[1] gives every party the right to a change of judge, if the requirements of RCW 4.12.050 are satisfied. *State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 830, 271 P.2d 435 (1954).

RCW 4.12.050 provides, in part:

> Any party . . . may establish such prejudice by motion, supported by affidavit . . . that he cannot, have a fair and impartial trial before such judge: *Provided,* That such motion and affidavit is filed and called to the attention of the judge before he shall have made any ruling whatsoever in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action, of the hearing of which the party making the affidavit has been given notice, and before the judge presiding has made any order or ruling involving discretion, but the arrangement of the calendar . . . or . . . the arraignment of the accused in a criminal action . . . shall not be construed as a ruling or order involving discretion within the meaning of this proviso;
> . . .

The court has no discretion in the matter; once the statutory requirements are met, an affidavit of prejudice must be granted unless the application of RCW 4.12.050 would lead to an absurd result. *Marine Power & Equip. Co. v. Department of Transp.,* 102 Wn.2d 457, 462, 687 P.2d 202 (1984).

As stated in *Marine Power,* at 463, RCW 4.12.050 was intended to remove all discretion from the trial judge in determining the validity or merits of the affidavit of prejudice.

> The statute's history reflects an accommodation between two important, and at times competing, interests: a party's right to one change of judge without inquiry and the orderly administration of justice. This history also reflects a decision to accord greater weight to the party's right to a change of judge. The two timeliness

---

[1]RCW 4.12.040 provides, in part:

"No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause."

criteria read into the statute by this court, and later incorporated by the Legislature, are well defined and permit little, if any, exercise of discretion by the trial judge. Cases decided before and after this last amendment also illustrate the right's predominate importance.

The court indicated a party who complies with the requirements of RCW 4.12.050 is entitled to a change of trial judge unless the circumstances are such that a literal application of the statute would lead to an absurd result. *Marine Power,* at 461. The record discloses the following pertinent facts in this regard: (1) Defense counsel had reason to know more than 3 weeks before trial which judge in a 2–judge, 3–county judicial district would preside over the case. (2) Defense counsel candidly admitted, without prompting from the court, that the actual reason for filing the motion and affidavit was to have the trial continued; he specifically stated he would withdraw the affidavit if the case was continued over to the January term.[2] (3) The trial judge indicated to defense counsel he would exchange cases with another judge of that judicial district and the case would proceed on time. This suggestion was not acted upon. (4) The court was prepared to proceed. (5) The clerk had assembled veniremen who were waiting for the case to be called. (6) Counsel was the third attorney accorded this defendant; he had formally appeared as Mr. Hansen's attorney approximately 8 days before trial, but had anticipated representing the defendant several weeks prior when Mr. Hansen first contacted him. (7) No reason is given or indication shown that additional preparation was required

---

[2]The dissent misconstrues the circumstances presented in this case when stating our holding "would allow the judge in question to always have a colloquy with the attorney or party who filed the affidavit before deciding whether to acquire another judge to try the case". Defense counsel volunteered the fact he was only really interested in a continuance when filing the affidavit of prejudice. Such was revealed without prompting or inquiry by the court; no colloquy occurred until *after* this actual reason behind the filing of the affidavit was disclosed. The trial judge was not required to ignore this flagrant abuse. The colloquy was justified because of counsel's admission at the onset of the motion. Thus, our holding does not defeat the purpose of RCW 4.12.050; it protects the orderly administration of justice by preventing an "absurd result". *Marine Power,* at 461.

by counsel to proceed with trial.

██ It is absolutely clear the affidavit of prejudice was filed only to obtain a continuance. This is a flagrant abuse of legislative intent. The trial court was not required to lie in this Procrustean bed; nor are we. An affidavit, timely filed, must be recognized and accorded due respect. Neither interrogation by the judge, nor a hearing as to the reasons behind the affidavit is to be countenanced. But here, a literal application of RCW 4.12.050, under these extraordinary circumstances, would lead to disruption of the orderly administration of justice for no legitimate reason. *Marine Power & Equip. Co. v. Department of Transp., supra.* We find no error.

██ Mr. Hansen next contends there are insufficient circumstances contained in the affidavit to establish probable cause for issuance of a search warrant for his residence. The concept of probable cause requires the existence of reasonable grounds for suspicion supported by circumstances sufficiently strong to warrant a man of ordinary caution to believe evidence of a crime can be found on the premises to be searched. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982); *State v. Ludvik,* 40 Wn. App. 257, 264, 698 P.2d 1064 (1985). The likelihood of criminal activity, not a prima facie showing of it, determines whether a search warrant should be issued. *State v. Patterson,* 83 Wn.2d 49, 55, 515 P.2d 496 (1973). Moreover, this court is required to give great deference to the magistrate's determination that probable cause exists; doubts are to be resolved in favor of the warrant. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977).

Here, the issuing magistrate was furnished an affidavit which stated the affiant had been a law officer for 27 years and had recently graduated from the Drug Enforcement Administration marijuana eradication school. The officer stated he had arrested people for possession of marijuana, while the marijuana was in the plant stage and in the dried

or processed seed and stems stage. After reciting the circumstances leading to his presence on the property, the affiant stated he observed four marijuana plants approximately 3½ to 4 feet tall growing next to tomato plants. He was told by three different people the property where the marijuana plants were located belonged to Mr. Hansen; this was confirmed by the Ferry County Assessor's Office. We conclude the affidavit was legally sufficient in that it stated more than a mere personal belief on the part of the affiant. *State v. Fisher, supra; State v. Helmka,* 86 Wn.2d 91, 542 P.2d 115 (1975).

In determining probable cause, the issuing magistrate may draw commonsense inferences from the facts and circumstances contained in the affidavit. *Helmka,* at 93; *State v. Christiansen,* 40 Wn. App. 249, 252–53, 698 P.2d 1059 (1985). Here, there was probable cause to believe marijuana was being unlawfully propagated on the Hansen premises. Thus, it was reasonable to conclude additional plants or processed marijuana could be found at other locations on the premises. As aptly stated in *Helmka,* at 93, "[i]t seems reasonable to infer that persons who grow illegal marijuana plants do so for a purpose other than the pursuit of an interest in horticulture". We conclude the search warrant was within the scope of probable cause established by the supporting affidavit. *Christiansen,* at 253.

The next issue is whether the warrantless search of the gardens by Deputy Nichols was lawful. The trial court determined the plants discovered in the first garden came within the plain view exception to the search warrant requirement. As to the second garden, the court similarly found the plants were within either the plain view or open view exception to the search warrant requirement. The court did not specify which exception applied to the second garden, stating the difference between the exceptions to the requirement of a search warrant is a matter of "semantics".

The principal distinction between the plain view and open view exception depends upon whether the officer is viewing the evidence from an intrusive or nonintrusive

vantage point. The three elements of the plain view exception to the search warrant requirement are: (1) prior justification for the intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by police that they have evidence of a crime before them. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh'g denied,* 404 U.S. 874, 30 L. Ed. 2d 120, 92 S. Ct. 26 (1971); *State v. Chrisman,* 100 Wn.2d 814, 819, 676 P.2d 419 (1984). In contrast, open view occurs when the evidence is discovered from a nonintrusive vantage point, *i.e.,* no legitimate privacy interest is at stake. *State v. Seagull,* 95 Wn.2d 898, 901–02, 632 P.2d 44 (1981); *State v. Perez,* 41 Wn. App. 481, 483, 704 P.2d 625 (1985).

█ The intrusions here were justified under the open fields doctrine. Open fields do not provide the setting for those intimate activities the Fourth Amendment is intended to shelter from governmental interference; there is no recognized privacy interest in the cultivation of crops in rural areas. *Oliver v. United States,* 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735 (1984). Even though Mr. Hansen may have had a subjective expectation of privacy, such interest is not one society is willing to imbue with constitutional protections. *Oliver,* at 180–81; *Hester v. United States,* 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445 (1924).

Const. art. 1, § 7 differs significantly from the fourth amendment to the United States Constitution; it provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Because of its unique language, article 1, section 7 generally provides greater protection against governmental intrusions than the Fourth Amendment. *State v. Myrick,* 102 Wn.2d 506, 510–11, 688 P.2d 151 (1984); *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983). In determining whether the State unreasonably intruded into Mr. Hansen's private affairs, we are guided by this court's decision in *State v. Crandall,* 39 Wn. App. 849, 697 P.2d 250, *review denied,* 103 Wn.2d 1036 (1985).

There, we held article 1, section 7 was not violated when

a police officer trespassed upon an open field which was not posted and was frequented by hunters. *Crandall,* at 854. Similarly, the fields here were not posted and were clearly visible to both Mr. Hansen's neighbors and to any passersby. Thus, Deputy Nichols' discovery of the first garden plot involved no unlawful intrusion into Mr. Hansen's private affairs under our state constitution. We conclude Deputy Nichols was justified in seizing the marijuana plants since no legitimate privacy interest was involved. *Crandall,* at 854.

The issue whether the intrusion into the second garden plot was similarly justified need not be addressed. Assuming, arguendo, the evidence from the second garden should have been excluded, the marijuana plants seized from the first garden plot were sufficient to convict Mr. Hansen of unlawfully manufacturing a controlled substance. *Christiansen,* at 257 (McInturff, J., concurring).

Affirmed.

GREEN, C.J., concurs.

McINTURFF, J. (dissenting)—I dissent from the majority's view regarding the affidavit of prejudice and conclude the motion should have been granted. RCW 4.12.040[3] gives every party the right to a change of judge if the requirements of RCW 4.12.050 are satisfied. *State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 830, 271 P.2d 435 (1954).

RCW 4.12.050 provides:

> Any party . . . may establish such prejudice by motion, supported by affidavit . . . that he cannot, have a fair and impartial trial before such judge: *Provided,* That such motion and affidavit is filed and called to the attention of the judge *before* he shall have made any rul-

---

[3]RCW 4.12.040 provides in part:

"No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause."

ing whatsoever in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action, of the hearing of which the party making the affidavit has been given notice, and before the judge presiding has made any order or ruling involving discretion, but the arrangement of the calendar . . . or . . . the arraignment of the accused in a criminal action . . . shall not be construed as a ruling or order involving discretion within the meaning of this proviso; . . .

(Italics mine.)

The majority concludes the motion was not timely because (1) defense counsel knew before the day of trial which judge would preside at the trial;[4] (2) the reason behind the motion was an attempt to secure a continuance of the trial date; and (3) the motion was disruptive of the Ferry County court system because defense counsel had failed to inform the court of the plan to file the motion and affidavit, causing inconvenience to the presiding judge, prospective jurors and the State's witnesses, who were all ready to proceed. Based on these reasons, the majority held granting the motion would have led to an "absurd result".

It is uncontroverted there had been no discretionary decision made in this case;[5] neither is Ferry County a 1–judge county. RCW 2.08.065. In contrast to *State v. Dixon*, 74 Wn.2d 700, 702–03, 446 P.2d 329 (1968), *Marine Power & Equip. Co. v. Department of Transp.*, 102 Wn.2d 457, 461, 687 P.2d 202 (1984) notes there are only two criteria which bring the statutory timeliness requirements into

---

[4] An affidavit submitted by the other judge of the county indicates:

(1) In 1983 it was his responsibility to schedule cases for both judges. The schedule was only tentative and was often changed.

(2) On or about September 21, 1983, he had a telephone conversation with the defendant's attorney and told him which judge was set to preside at Mr. Hansen's trial, then set for October 18, 1983.

[5] I note on page 3 of the affidavit filed by the prosecutor he states the judge had ruled September 27 that the defendant had waived his right to a CrR 3.6 hearing by failing to appear. However, we are unable to substantiate this statement in the record.

play: (1) whether there has been a discretionary ruling, and (2) whether the county is a 1–judge county. As interpreted in *Marine Power,* at 463, RCW 4.12.050 was intended to take away from the trial judge *all discretion* in determining prejudice:

> The statute's history reflects an accommodation between two important, and at times competing, interests: a party's right to one change of judge *without inquiry* and the orderly administration of justice. This history also reflects a decision to accord greater weight to the party's right to a change of judge. The two timeliness criteria read into the statute by this court, and later incorporated by the Legislature, are well defined and permit little, if any, exercise of discretion by the trial judge. Cases decided before and after this last amendment also illustrate the right's predominate importance.

(Italics mine.)

Thus, the majority's reasoning is irrelevant in determining whether the affidavit should have been granted. It does not matter whether Mr. Hansen's attorney had been his counsel for 3 days, 3 weeks or 3 months; whether his counsel had appeared in court that morning on another matter, whether prospective jurors were waiting in the hall or whether the reason behind the motion was to secure a continuance. The only relevant factor was whether the court had made a discretionary decision. It had not.

To hold as the majority does would allow the judge in question to always have a colloquy with the attorney or party who filed the affidavit before deciding whether to acquire another judge to try the case. This defeats the purpose of RCW 4.12.050, *i.e.,* to grant the motion without discretion once the timeliness requirements are satisfied:

> The statute permits of no ulterior inquiry; it is enough to make timely the affidavit and motion, and however much the judge moved against may feel and know that the charge is unwarranted, he may not avoid the effect of the proceeding by holding it to be frivolous or capricious.

*Marine Power,* at 461 (quoting *State ex rel. Talens v. Hol-*

*den,* 96 Wash. 35, 40, 164 P. 595 (1917)).

Once a party has complied with the terms of the statute, the judge to whom a motion and affidavit of prejudice is directed is divested of authority to proceed further into the merits of the motion.[6] *Dixon,* at 702. It is incumbent upon the presiding judge to recuse himself immediately upon the filing of the motion and affidavit without further discussion of the matter. Here, when the judge indicated to counsel it would be no problem to switch judges, he should have done just that, without further action by, or discussion with, defense counsel.

Lastly, because of the court's lack of authority, Mr. Hansen was not tried by a court of competent jurisdiction; the cause should be remanded to the court for retrial. *State v. Cockrell,* 102 Wn.2d 561, 567, 689 P.2d 32 (1984).

Review granted by Supreme Court May 6, 1986.

---

[6]My review of the report of proceedings discloses the following:

Page 6: Motion and affidavit of prejudice is filed.

Page 7: Court's initial ruling the motion is not timely.

Pages 7–36: The court and counsel discuss the motion, particularly with respect to Mr. Arnold's participation in the case.

Page 37: Mr. Arnold offers to withdraw the affidavit if the case is continued to the January term.

Pages 40–44: Ruling on motion.