[No. 13896-8-III.   Division Three.   November 16, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRY LEE JOHNSON, *Appellant*.

---

[10]*Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 433, 754 P.2d 120 (1988).

[11]*Ward*, 51 Wn. App. at 433.

*Paul J. Wasson II*, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

SWEENEY, A.C.J. — This is a drug case. Terry Johnson was convicted of possession of marijuana with intent to manufacture on stipulated facts after the judge denied his motion to suppress evidence seized from his home. He had argued that there was insufficient corroborating evidence to support an anonymous tip which accused him of growing marijuana. Giving the required deference to both the issuing magistrate and the trial judge, we conclude there was sufficient evidence to support the finding of probable cause and affirm the conviction.

On July 24, 1992, the Federal Drug Enforcement Administration (DEA) received a tip from an undisclosed informant who reported that Johnson was involved in growing marijuana and that he drove a blue/white Chevrolet Blazer, license number 666 BXW. DEA agents confirmed that the vehicle was indeed licensed in Johnson's name. Two months later they obtained his Spokane address by checking Johnson's driver's license records. Four months later agents started watching his Spokane address and observed: that a Chevrolet Blazer, license number 666 BXW, was parked at the residence; the roof of the home had no snow on it while neighboring houses had the "standard" two feet of snow; the roof had not been shoveled; surrounding houses had piles of snow around the houses where the snow had been shoveled from the roof and those houses continued to have white dust covering the shingles; on January 12, 1993, the agents noted there had been a light snowfall and during a drive-by of the house on January 13, they noted again no snow on the roof and condensation streaks were observed on the siding where the siding meets the roof.

On January 15, the DEA obtained the Washington Water Power Company records for the residence which showed that Johnson was the user and that the electrical usage was higher in some months than a comparative pe-

riod and lower in some months than the comparative period. On January 12 and January 15, Special Agent Landers of the DEA conducted infrared scans of Johnson's house. Those scans showed the roof and exposed basement wall temperatures to be significantly higher than those in surrounding residences. On January 22, at 2:15 A.M., both Special Agent Levy and Special Agent Destito smelled marijuana from the street in front of the house.

Based on this information, Special Agent Levy submitted an affidavit in support of an application for a search warrant to a United States Magistrate; she issued the search warrant. Pursuant to the warrant, agents conducted a search of Johnson's house and found a marijuana grow operation.

■ We begin our analysis by agreeing with both parties that the results of the infrared scan may not be considered.[1] We then review the affidavit in support of the search warrant without the results of the infrared scan.[2] We next determine whether other competent evidence supports a finding of probable cause.[3] We turn first to the question of whether information that the DEA agents smelled marijuana is sufficient to support the issuance of the probable cause finding. We do so because if that information is sufficient, a determination of the legal sufficiency of the anonymous tip becomes unnecessary.[4]

■ The basic rule is that probable cause to issue a warrant is established if the supporting affidavit sets forth facts sufficient for a reasonable person to conclude the de-

[1]*State v. Young*, 123 Wn.2d 173, 867 P.2d 593 (1994).

[2]*State v. Garrison*, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992); *State v. Solberg*, 66 Wn. App. 66, 78, 831 P.2d 754 (1992), *rev'd in part on other grounds*, 122 Wn.2d 688, 861 P.2d 460 (1993).

[3]*State v. Coates*, 107 Wn.2d 882, 887, 735 P.2d 64 (1987); *State v. Ridgway*, 57 Wn. App. 915, 919, 790 P.2d 1263 (1990).

[4]*State v. Huft*, 106 Wn.2d 206, 210, 720 P.2d 838 (1986).

fendant probably is involved in criminal activity.[5] We then turn to the standard of review and canons of construction governing review of search warrants. Both militate in favor of upholding the warrant. The standard of review is abuse of discretion because the issuance of the warrant is a matter of judicial discretion.[6] And a magistrate's determination that a warrant should issue is given deference.[7] We further test the question of probable cause in a commonsense fashion rather than hypertechnically.[8]

■ In considering the adequacy of smell observations to support probable cause, we consider the experience and the expertise of the DEA agents.[9] In fact, the agents' particular expertise has been called critical.[10] The agents' sense observations must consist of more than mere personal belief.[11]

The affidavit here amply identifies the specific training and experience of each agent involved in the investigations. It thereby adequately dispels any notion that the representation in the affidavit was merely a personal belief. Special Agent Levy had been involved for over seven years as the Marijuana Eradication Coordinator for the Eastern District of Washington. He had personally investigated or assisted in investigations culminating in the seizure of several thousand cannabis plants. In addition, he had graduated from marijuana aerial spotting school, Indoor Cannabis Investigation School, and had participated in at least thirty search and/or seizure war-

---

[5]*State v. Cord*, 103 Wn.2d 361, 365-66, 693 P.2d 81 (1985).

[6]*State v. Remboldt*, 64 Wn. App. 505, 509, 827 P.2d 282, *review denied*, 119 Wn.2d 1005 (1992).

[7]*Cord*, 103 Wn.2d at 366.

[8]*State v. Vonhof*, 51 Wn. App. 33, 41, 751 P.2d 1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989).

[9]*Remboldt*, 64 Wn. App. at 510.

[10]*State v. Smith*, 93 Wn.2d 329, 351-52, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980).

[11]*Vonhof*, 51 Wn. App. at 41.

rants in the preceding year, all involving the manufacture of cannabis by indoor propagation. Agent Levy represented that he was familiar with the characteristic odor associated with growing or freshly harvested marijuana. That representation was neither challenged at the trial court nor in this appeal.

Special Agent Destito had been with the DEA since 1991 and had an additional six years of experience as a police officer. During that time, he attended the Washington State Criminal Justice Center, Basic Law Enforcement Academy, and the United States Department of Justice DEA/FBI Academy. He participated in and directed police operations targeting both indoor and outdoor marijuana cultivation. He also represented that as the result of this training and experience he knew the distinctive odor associated with the marijuana plant. This representation is likewise unchallenged by Johnson. The sense observations here are based on more than personal belief.[12]

A similar affidavit was upheld in *State v. Hansen*.[13] There, the affidavit represented that the affiant had been a law officer for twenty-seven years, had graduated from the DEA marijuana eradication school, and had arrested people for possession of marijuana. The court concluded that the smell was based on more than mere personal belief on the part of the affiant.[14] Like *Hansen*, the affidavit here identifies the length of the career of both individuals, their pertinent education, and past experience in the arrest and investigation of people growing marijuana.

Johnson argues nonetheless that the representations in the affidavit supporting the search warrant are inadequate. He says the agents should have described the particular distinctive characteristic of the odor they identified and further explained why they could not smell marijuana

---

[12]*See Smith*, 93 Wn.2d at 352; *State v. Compton*, 13 Wn. App. 863, 866, 538 P.2d 861 (1975).

[13]42 Wn. App. 755, 714 P.2d 309, *aff'd*, 107 Wn.2d 331, 728 P.2d 593 (1986).

[14]*Hansen*, 42 Wn. App. at 761.

on different parts of the property under investigation. They also should have been required to detail their success rates as to previous warrants and identify their distance away from the home when they smelled the odor. We disagree.

Again, this affidavit is not to be viewed in a hypertechnical manner.[15] And there is nothing in the case law of this state which would impose such a requirement.[16] Both agents smelled the odor of growing or freshly harvested marijuana and they had a basis for knowing that smell. A similar finding was made by the court in *Vonhof*.

Contrary to Johnson's assertion, the affidavit does not indicate the agents were unable to smell marijuana from other parts of the property but rather that the smell could not be detected from any location other than directly in front of Johnson's residence. But more importantly, the failure to explain away the absence of a smell in other locations would not be fatal to the affidavit absent some demonstration of a material omission of fact.[17]

Finally, Johnson argues that exact distances from which the agents smelled the marijuana should have been included in the affidavit. This argument is unsupported by case law.[18] An odor unconnected to any particular residence might be insufficient to establish probable cause standing alone. But other available information allows a magistrate to draw the reasonable inference that the odor was connected to the defendant's residence.[19] And, moreover, the agents here did provide some idea of their loca-

[15]*Vonhof*, 51 Wn. App. at 41.

[16]*Vonhof*, 51 Wn. App. at 41-42; *see also State v. Roth*, 30 Wn. App. 740, 743, 637 P.2d 1013 (1981) (indicating that it was hard to conceive that a trained officer could not recognize odor of marijuana), *review denied*, 97 Wn.2d 1013 (1982).

[17]*State v. Wilke*, 55 Wn. App. 470, 480, 778 P.2d 1054, *review denied*, 113 Wn.2d 1032 (1989).

[18]*State v. Petty*, 48 Wn. App. 615, 622-23, 740 P.2d 879 (stating that a magistrate need only draw the reasonable inference that the odor is connected to defendant's residence), *review denied*, 109 Wn.2d 1012 (1987).

[19]*Petty*, 48 Wn. App. at 622-23.

tion when they stated they smelled the odor in front of the home while in the street.

Johnson also argues that the *Remboldt* case established three factors which must be met before the smell observation of an officer is sufficient to establish probable cause. These include that the issuing magistrate is fully informed of the experience and expertise of the officers, that the information contained in the affidavit is based on more than mere personal belief, and finally that the information corroborates the informant's tip.[20]

Johnson's interpretation of *Remboldt* is incorrect. The factors referred to in *Remboldt* are offered only as reasons why the affidavit in that case was sufficient, they do not express an immutable standard. As the court in *Remboldt* stated:

> In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly *correlative to what must be proved.*[21]

The conviction is affirmed.

MUNSON, J., concurs.

SCHULTHEIS, J. (dissenting) — I respectfully dissent. The majority finds the Drug Enforcement Administration (DEA) agents' observations they could smell marijuana while standing in the street in front of Terry Johnson's house, combined with observations of apparent heat loss from the residence, support a finding of probable cause. While I agree that olfactory observations can support a probable cause determination, *e.g., State v. Weller*, 76 Wn. App. 165, 168, 884 P.2d 610 (1994), I do not believe they do so in this case.

---

[20]*Remboldt*, 64 Wn. App. at 511.

[21]*Remboldt*, 64 Wn. App. at 510-11 (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949)) (emphasis added).

The investigation of Mr. Johnson began with an anony-
mous tip that he was involved in the illicit cultivation of
marijuana and that he drove a specific vehicle. When the
police can show the informant is credible and obtained the
information in a reliable way,[22] they can use a tip to estab-
lish probable cause in an affidavit supporting a search
warrant. *State v. Huft*, 106 Wn.2d 206, 209-10, 720 P.2d
838 (1986); *State v. Jackson*, 102 Wn.2d 432, 436-37, 688
P.2d 136 (1984). *See Spinelli v. United States*, 393 U.S.
410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*,
378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). When
the tip fails both prongs of the test, as here, probable cause
may still be established by independent police investiga-
tion. *Huft*, 106 Wn.2d at 210; *Jackson*, 102 Wn.2d at 438.
These investigations should point to suspicious activities
or indications of criminal activity along the lines sug-
gested by the informant; corroboration of innocuous facts
is insufficient. *Huft*, 106 Wn.2d 206; *Jackson*, 102 Wn.2d
432.

Investigating officers verified the vehicle belonged to
Mr. Johnson and obtained his address from department of
motor vehicle records. Nearly six months after receiving
the tip, officers conducted several visual examinations of
Mr. Johnson's residence. They saw his vehicle there, and
another which was also registered to him. They observed
a lack of snow on the roof and condensation streaks on
the siding where it joined the roof, suggesting ongoing
heat loss from the roof of the structure. And they obtained
power consumption records showing usage in 1992 varied
from usage in 1991: some months showed higher usage,
while some months showed lower usage. It is impossible,
however, to determine from the affidavit which months

---

[22]The affidavit must set forth (1) some of the underlying circumstances from
which the informant drew his conclusion so that a magistrate can indepen-
dently evaluate the reliability of the manner in which the informant acquired
his information and (2) some of the underlying circumstances from which the of-
ficer concluded the informant was credible or his information reliable. *Spinelli
v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v.
Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *State v. Jackson*, 102
Wn.2d 432, 435, 688 P.2d 136 (1984).

were associated with Mr. Johnson's occupancy of the residence. Only the apparent heat loss from the residence is even remotely indicative of marijuana cultivation. Alone, it is too innocuous to establish probable cause. *See, e.g., State v. McPherson*, 40 Wn. App. 298, 301, 698 P.2d 563 (1985).

The deciding factor for the majority is the odor evidence presented by Special Agents Levy and Destito. Had they been inside the residence, in a doorway, near an air vent or close to the building when they detected the smell of growing or freshly harvested marijuana, I would agree their observations would justify issuance of a search warrant.[23] Under such circumstances, it would be reasonable to conclude the odor was emanating from Mr. Johnson's house and that a grow operation would be found within. That was not the case here, however.

The affidavit states the DEA agents smelled the odor of growing or freshly harvested marijuana while walking in the street in front of Mr. Johnson's house and, although they walked around the block, they could not detect the odor anywhere else. The affidavit establishes the agents possess the requisite training, experience and skill to identify marijuana by its odor, but it does not adequately connect the odor with Mr. Johnson's residence. The affidavit is silent with respect to their distance from his house and their ability to smell marijuana at that distance, as well as other possibly relevant factors such as landscaping, wind direction and the relative location of other residences on the street. Since the agents were standing in the street, they must also have been directly in front of the house on the north side of the street, assuming there is one there. Despite the affidavit's demonstration of the

---

[23]Cases have upheld the issuance of search warrants based wholly or in large part on olfactory observations made in these circumstances: *e.g., Weller*, 76 Wn. App. 165 (officers in open doorway); *State v. Solberg*, 66 Wn. App. 66, 831 P.2d 754 (1992) (officers near defendant's home), *rev'd in part on other grounds*, 122 Wn.2d 688, 861 P.2d 460 (1993); *State v. Vonhof*, 51 Wn. App. 33, 751 P.2d 1221 (tax appraiser near air vent of shop building), *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989); *State v. Hashman*, 46 Wn. App. 211, 729 P.2d 651 (1986) (officers in defendant's home), *review denied*, 108 Wn.2d 1021 (1987).

agents' general ability to recognize the odor of growing or freshly harvested marijuana, it contains no information from which one can draw a commonsense inference that they were able to determine the source of the smell from their location. Without such details, the affidavit presents no more than a personal belief that the odor came from Mr. Johnson's residence.

The six-month-old tip that Mr. Johnson was "involved in the illicit cultivation of marijuana," plus the observation that his residence lost heat through the roof, plus the agents' whiff of marijuana in the street in front of his house do not support a reasonable inference the odor came from Mr. Johnson's residence. Because the affidavit does not set forth sufficient facts to reasonably conclude Mr. Johnson was growing marijuana in his residence, I would reverse.

Review denied at 128 Wn.2d 1023 (1996).