988 P.2d 463 (1999)
97 Wash.App. 578
STATE of Washington, Respondent,
v.
Thomas Eugene WILSON, Appellant.
No. 17572-3-III.
Court of Appeals of Washington, Division 3, Panel One.
October 28, 1999.
*464 Kenneth W. Raber, Kirschenmann, Devine, Fortier & Raber, Yakima, for Appellant.
James P. Hagarty, Prosecuting Attorney, Goldendale, for Respondent.
SWEENEY, A.C.J.
The novel question here is whether police can fly over a suspected marijuana grow site, in a fixed wing aircraft, at 500 feet (the Federal Aviation Administration (FAA) legal minimum for fixed wing aircraft in the area) without violating article I, section 7, of the Washington State Constitution (right to privacy). We conclude that they can and affirm the trial judge's denial of Thomas Wilson's motion for suppression.

FACTS
A Goldendale resident, who remained anonymous, told Police Detective Pat Kaley that Thomas Wilson was growing marijuana at his 393 Fish Hatchery Road residence in Goldendale. That same day, "a prominent business man in Goldendale" told Detective Roy Brown of the Klickitat County Sheriff's Office that he had been told Mr. Wilson watered the top of a small, roofless shed on his 393 Fish Hatchery Road property.
The Goldendale Police Department arranged for aerial surveillance of Mr. Wilson's property. Washington State Patrol Trooper Jim Williams, the pilot, is certified to spot marijuana from the air. Detective Kaley was on board the plane. Detective Arne Gonser of the Clark-Skamania County Drug Task Force was also on board. He is also a trained "marijuana spotter."
Detective Brown watched the plane from the ground. Using binoculars, he saw the plane circle over the Wilson residence. He estimated its altitude at about 500 feet. Detective Brown had been a deputy sheriff for 7 ½ years. He completed the Washington State Law Enforcement Academy, a 2 ½-year assignment to the drug investigation unit, and formal training and experience in controlled substance matters.
Detective Gonser saw "15 to 20 plants or more" growing inside on the north wall of the roofless shed. The plants had been groomed and manicured. Both Detective Gonser and Trooper Williams were 90 percent sure they saw marijuana plants. Each saw a "fuzzy" type budone associated with a marijuana plant. Detective Kaley saw green plants growing inside the building but could not say for sure if they were marijuana plants. Mr. Wilson made no showing that police used binoculars, although he claimed they must have.
Detective Gonser, Detective Kaley, and Detective Brown drove to an area close to Mr. Wilson's residence and saw the shed from Fish Hatchery Road. The shed windows were boarded up.
Detective Brown drafted an affidavit to support a search warrant. The Klickitat County Sheriff's Department got the warrant and executed on it the same day. They seized marijuana plants from the shed and house on Mr. Wilson's property. They also seized a pipe, a bong, weighing scales, and plastic baggies containing marijuana residue.
The State charged Mr. Wilson with manufacture of a controlled substance, possession of a controlled substance (marijuana) and use of drug paraphernalia. He moved to suppress the drug evidence. The court denied his motion and later convicted him of all *465 three charges following a bench trial on stipulated facts.

DISCUSSION
1. Was the aerial surveillance of Mr. Wilson's property an illegal search in violation of article I, section 7, of the Washington Constitution? Or was it instead a valid police investigation from a lawful vantage pointpublic airspace?
The court here concluded that the flyover was not a search. We review this conclusion of law de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
This flyover violated Washington Constitution article I, section 7, if it unreasonably intruded into Mr. Wilson's private affairs. State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984). But if no search occurred, article I, section 7, is not implicated. State v. Young, 123 Wash.2d 173, 181, 867 P.2d 593 (1994).
Aerial surveillance is not a search where the contraband is identifiable with the unaided eye, from a lawful vantage point, and from a nonintrusive altitude. State v. Cord, 103 Wash.2d 361, 365, 693 P.2d 81 (1985); Myrick, 102 Wash.2d at 513-14, 688 P.2d 151; State v. Cockrell, 102 Wash.2d 561, 569, 689 P.2d 32 (1984). But aerial surveillance may be intrusive and require a warrant if the vantage point is unlawful or the method of viewing is intrusive. Const. art. I, § 7; Young, 123 Wash.2d at 182-83, 867 P.2d 593. So the question here is whether aerial surveillance without binoculars from a fixed wing aircraft operating 500 feet above ground level is intrusive.
Mr. Wilson first argues that the court could not know whether the plane was actually flying at an altitude of 500 feet because Detective Brown's conclusion was only an estimate. The trial court found that the plane operated at 500 feet. And Mr. Wilson does not assign error to this finding. It is therefore a verity on appeal. RAP 10.3(g); State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
Washington has not set a specific altitude below which an aerial search is overly intrusive. See Cord, 103 Wash.2d at 365, 693 P.2d 81 (aerial surveillance at 3,400 feet is not a search); Cockrell, 102 Wash.2d at 569, 689 P.2d 32 (no search where pilot testified the plane flew no lower than 800 feet and officers had no difficulty identifying the marijuana gardens); Myrick, 102 Wash.2d at 514, 688 P.2d 151 (aerial surveillance at 1,500 feet is not a search). Intrusiveness is generally a function of altitude and technology. Daniel R. Hamilton, Comment, Aerial Surveillance: A Plane View of the Fourth Amendment, 18 GONZ. L.REV. 307, 326-38 (1982-83). At least one court has held that aerial surveillance at an altitude of 500 feet is not a search. Commonwealth v. Robbins, 436 Pa.Super. 177, 647 A.2d 555 (1994).
In Myrick, the court noted that, at the time of its opinion, a California court held an aerial surveillance unconstitutional because the police flew 20 to 25 feet above ground and within 125 feet of the appellant's residence. Myrick, 102 Wash.2d at 512, 688 P.2d 151 (citing People v. Sneed, 32 Cal. App.3d 535, 108 Cal.Rptr. 146 (1973)). The Myrick court, faced with aerial surveillance at an altitude three times greater than the surveillance of Mr. Wilson's property, declined to adopt bright line rules. Myrick, 102 Wash.2d at 513-14, 688 P.2d 151.
For us, adoption of the FAA limitations in this case makes the most sense because they are most consistent with current Washington law. Young, 123 Wash.2d at 182-83, 867 P.2d 593. FAA regulations permit fixed wing aircraft to operate at an altitude of 500 feet above the ground in other than congested areas. 14 C.F.R. § 91.119 (1999); Florida v. Riley, 488 U.S. 445, 451 n. 3, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). Mr. Wilson's property is located on a county road, not in a congested area. Clerk's Papers at 10, 14. Five hundred feet above the ground is then a lawful vantage point because fixed wing aircraft can legally operate at that altitude. And the vantage point is therefore no more intrusive than police standing on a public street corner, or other legal vantage point. Young, 123 Wash.2d at 183, 867 P.2d 593; Myrick, 102 Wash.2d at 514, 688 P.2d 151. *466 We hold therefore that police observations from a fixed wing aircraft operating 500 feet above ground level in other than congested areas do not violate article I, section 7, of the Washington State Constitution.
Mr. Wilson suggests that the officers must have used binoculars to see the marijuana. But that is a factual determination. And we are limited by the record before us. State v. Crane, 116 Wash.2d 315, 335, 804 P.2d 10, cert. denied, 501 U.S. 1237, 111 S.Ct. 2867, 115 L.Ed.2d 1033 (1991); State v. Smith, 104 Wash.2d 497, 510, 707 P.2d 1306 (1985). We find no indication in this record that the officers used visual enhancement equipment to see the marijuana. And Mr. Wilson did not refute the State's testimony that police saw marijuana with the naked eye from 500 feet above the ground. See Cord, 103 Wash.2d at 363-64, 693 P.2d 81 (defendant presented expert testimony that marijuana was not identifiable from the height at which the flyover was conducted).
2. Does the search warrant affidavit support the court's conclusion of probable cause?
Mr. Wilson challenges the sufficiency of the affidavit supporting the warrant on two grounds. First, he says that the anonymous citizen complaints are insufficient to support the court's probable cause conclusion. Next, he complains that the marijuana spotters were not qualified to conclude that what they saw was marijuana. We answer each contention in order.
Probable cause requires facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity. Cord, 103 Wash.2d at 365-66, 693 P.2d 81; State v. Johnson, 79 Wash.App. 776, 779-80, 904 P.2d 1188 (1995), review denied, 128 Wash.2d 1023, 913 P.2d 817 (1996). The standard of review is abuse of discretion. We therefore give great deference to a magistrate's decision. State v. Cole, 128 Wash.2d 262, 286, 906 P.2d 925 (1995); Johnson, 79 Wash.App. at 780, 904 P.2d 1188. We test the probable cause conclusion by using common sense rather than a hypertechnical approach. Id. And the magistrate may certainly draw commonsense inferences from the facts and circumstances set forth in the affidavit. State v. Christiansen, 40 Wash. App. 249, 252-53, 698 P.2d 1059 (1985).
Anonymous citizen reports. Probable cause requires a showing of both the basis of the informant's knowledge and the informant's veracity. State v. Murray, 110 Wash.2d 706, 711-12, 757 P.2d 487 (1988); State v. Jackson, 102 Wash.2d 432, 433, 436-38, 688 P.2d 136 (1984). Police may, however, independently investigate their suspicions, corroborate evidence obtained through that investigation, and thereby shore up any deficiency in either of the Aguilar-Spinelli[1] prongsknowledge or veracity. Murray, 110 Wash.2d at 712-13, 757 P.2d 487. The corroborating evidence should point to suspicious activity along the lines suggested by the informant. Id.
Here, the information by the citizen informants satisfies neither prong of Aguilar-Spinelli. But independent police investigation here more than cured the deficiencies in the informants' statements. Id. at 712-13, 757 P.2d 487. During the flyover of Mr. Wilson's property, the officers saw a small, roofless shed containing 15 to 20 plants that were groomed and resembled marijuana. The officers also observed from Fish Hatchery Road that the shed windows were boarded up.
Officers' qualifications. Again, probable cause to issue a warrant is established if the supporting affidavits set forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity. Cord, 103 Wash.2d at 365-66, 693 P.2d 81. The affidavit supporting the search warrant included the following information, which documented the results of the independent police investigation:
(1) Detective Gonser and Detective Kaley were on the aerial surveillance aircraft piloted by Trooper Williams.
(2) Detective Gonser and Trooper Williams both were 90 percent sure they saw marijuana plants in the shed.
*467 (3) Although untrained in aerial observation, Detective Kaley thought he saw plants growing inside the building.
(4) Detective Gonser is a trained observer for spotting growing marijuana from the air. During his three years of experience as a trained observer, he has spotted and eradicated over 30 marijuana gardens.
(5) Trooper Williams is a trained and certified observer for spotting marijuana from the air.
Clerk's Papers at 10, 13-14. The totality of the information in the affidavit provided ample cause for a reasonable person to conclude that Mr. Wilson was probably involved in criminal activity. Cord, 103 Wash.2d at 365-66, 693 P.2d 81. The court did not abuse its considerable discretion in issuing the warrant based on the general statements of the officers' qualifications in the affidavit.
Affirmed.
BROWN and KATO, JJ., concur.
NOTES
[1] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).