[No. 8037–1–II.  Division Three.  August 7, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. BILLY J. CARLOW, *Appellant.*

*John L. Farra,* for appellant (appointed counsel for appeal).

*Michael Spencer, Prosecuting Attorney,* and *W. David Rovang, Deputy,* for respondent.

MUNSON, J.*—Billy J. Carlow appeals his conviction for indecent liberties, claiming his confession to police should have been suppressed as the product of an unlawful arrest. The State has filed a cross appeal challenging the dismissal of its sexual psychopathy petition. We affirm the conviction, but reverse the dismissal of the sexual psychopathy petition and remand for further proceedings consistent with this opinion.

At approximately 4:30 p.m. on January 15, 1983, Officers Reginald L. Sheppard and Garth D. Jones of the McCleary Police Department went to the defendant's residence in order to arrest him for the alleged sexual abuse of two minor females. Although Mr. Carlow concedes there was probable cause to arrest, no arrest warrant had been obtained by the officers.

After Officer Sheppard knocked at the residence, Mr. Carlow answered the door and stepped past the threshold onto the porch. The officer and the defendant were previously acquainted; their several contacts in the past on unrelated matters had been "friendly." Officer Sheppard advised Mr. Carlow he wished to speak with him "about a very serious matter," and "wanted him to go to the police station with [them]." As he turned and walked back into the house, Mr. Carlow stated he wanted to get his coat. The officers followed, and as Mr. Carlow was putting on his coat in his bedroom, Officer Sheppard formally advised him he

---

*This case was heard by a panel of Division Three judges sitting in Division Two.

was under arrest. Mr. Carlow was not advised of the particular reasons for his arrest until after he was handcuffed and escorted outside to the patrol vehicle.

A short time later at the police station, he was given *Miranda* warnings. The defendant acknowledged he understood those rights and wished to waive them and speak with the officers about the alleged crimes. Although he initially denied sexual contact with the two girls, he later admitted the crimes and signed a statement describing them in elaborate detail. Mr. Carlow did not ask for an attorney at any time during the interrogation, nor did he invoke his right to remain silent; the interview ended after approximately 2 hours.

On March 4, Mr. Carlow was charged by amended information with two counts of indecent liberties, former RCW 9A.44.100(1)(c). On that same day, the defendant moved to suppress his statements to police, claiming they were the product of an unlawful arrest. During the CrR 3.5 hearing, Officers Jones and Sheppard testified to the above facts. Both officers stated Mr. Carlow "seemed relaxed" and was not hesitant in speaking with them about the alleged crimes. Following argument of counsel, the court denied the motion to suppress on the basis that an arrest had occurred before Mr. Carlow reentered his residence.

On March 11, the State filed a sexual psychopathy petition. RCW 71.06.020.[1] On May 31, the second count of indecent liberties in the amended information was dismissed on the State's motion. On that same day, the parties submitted a stipulation of facts sufficient for a finding of guilty; a copy of Mr. Carlow's signed confession was attached to that stipulation. After Mr. Carlow waived his

---

[1]RCW 71.06.020 provides:

"Sexual psychopaths—Petition. Where any person is charged in the superior court in this state with a sex offense and it appears that such person is a sexual psychopath, the prosecuting attorney may file a petition in the criminal proceeding, alleging that the defendant is a sexual psychopath and stating sufficient facts to support such allegation. Such petition must be filed and served on the defendant or his attorney at least ten days prior to hearing on the criminal charge."

rights to a jury trial, the court found him guilty on the remaining indecent liberties charge.

On January 13, 1984, Mr. Carlow filed a waiver of his right under RCW 71.06.030[2] to be sentenced prior to evaluation for sexual psychopathy; the court ordered him committed to Western State Hospital for a 90–day evaluation. After receiving the hospital's report, the court entered judgment and sentence on August 20; a notice of appeal was filed by the defendant the same day. On August 23, the court conducted a hearing on the sexual psychopathy petition to determine whether the 10–year sentence imposed should be stayed pending treatment.

The report submitted by Western State Hospital diagnosed Mr. Carlow as a sexual psychopath, but concluded he was not presently amenable to treatment in its sexual offender program. On the basis of this report, the defense argued the original sentence should be carried out regardless of whether Mr. Carlow was found to be a sexual psychopath. Over the defendant's objection, the director of the sexual offender program at Western State Hospital was allowed to express her opinion Mr. Carlow is a sexual psychopath. However, when the defense continued to object to the State's evidence, the following exchange occurred:

THE COURT: I intend to sustain every objection [the defense] make[s], so if you make an objection, I'll sustain it.

Let me make myself clear: I consider that being sent to the sex offender program is for the defendant's benefit. If he objects to being sent there, if he's not willing to go and he doesn't want this evidence in which would send him there, then I won't let it in.

So far as I'm concerned, he's going into the penal sys-

---

[2]RCW 71.06.030 provides in part:

"Procedure on petition—Effect of acquittal on criminal charge. The court shall proceed to hear the criminal charge. If the defendant is convicted or has previously pleaded guilty to such charge, judgment shall be pronounced, but the execution of the sentence may be deferred or suspended, as in other criminal cases, and the court shall then proceed to hear and determine the allegation of sexual psychopathy."

tem if they don't prove that he is a sexual psychopath. Do you understand what I'm saying?

MR. FARRA: Sure, Your Honor. I have explained that to my client. He's instructed me—

THE COURT: So any time you make an objection, I'm going to sustain it because I consider this evidence is being offered on the defendant's behalf, not against him.

MR. FARRA: I agree with you, sir.

MR. ROVANG: May I address that, Judge? It's the State's position that Mr. Carlow needs treatment. Sending him to the penal system will keep him out of the public for perhaps four years, perhaps three years, but he will still be a sexual psychopath when he gets out.

THE COURT: Then they should never let him out.

MR. ROVANG: Well, they have to let him out because the maximum sentence is 10 years unless he's found to be a sexual psychopath.

THE COURT: They have already examined this man. They have already pronounced him not amenable to treatment. He has already indicated that he does not want to go back, that he will not cooperate with them.

. . .

MR. ROVANG: May I address that, Judge? The statute provides and the case law provides that if this man is not amenable to treatment and does not cooperate, he can be committed indefinitely if he is a danger to be at large.

If he refuses to seek treatment there's no reason he should be let loose on the public again even after the statutory term of his sentence has expired, if he's dangerous to be at large, and as a sexual psychopath he can be committed to Western State and the public protected from him, and that's what this hearing is all about.

When the court later sustained an objection to Officer Jones' testimony for the reasons stated above, the prosecutor stated: "The Court's ruling effectively abates and terminates the State's case, Judge. Could I present an order on the Court's ruling?" Thereafter, the court entered an order dismissing the sexual psychopathy petition on the stipulation of the parties that the defendant is not presently amenable to treatment. On August 24, the State filed a cross appeal, challenging the order of dismissal and the court's ruling sustaining all defense objections to the State's

evidence. Mr. Carlow moved to dismiss the cross appeal; the motion was denied by commissioner's ruling.

■ On appeal, Mr. Carlow contends his confession should have been suppressed as the product of an unlawful arrest, citing *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). The State argues *Payton* is inapplicable because Mr. Carlow was under arrest prior to his reentry into the house. The trial court found Mr. Carlow was under arrest on his porch before reentry into the house. Although Mr. Carlow was not advised of his arrest while on the porch, it is implicit in the "request" that he was not free to go anywhere but the police station. *See State v. Byers*, 88 Wn.2d 1, 5–6, 559 P.2d 1334 (1977), *overruled in nonpertinent part in State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984). The record supports the finding of the arrest outside the house.[3]

On its cross appeal, the State argues the trial court abused its discretion in refusing to consider evidence of the defendant's sexual psychopathy; in so doing, the court deprived the State of a fair hearing on the matter and, thus, failed in its mandatory responsibility to enter a finding on the issue of sexual psychopathy. In response, Mr. Carlow asserts these contentions are moot since the parties stipulated to the dismissal of the petition. We disagree.

---

[3]Assuming arguendo Mr. Carlow was not under arrest until he was formally advised of such inside the house, the question remains whether this illegality in terms of *Payton* so tainted his confession as to require its suppression under the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States*, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

The record establishes Mr. Carlow was predisposed to talking with the officers before he was formally advised of his arrest. Testimony of the officers, likewise, indicates any possible shock or coercive effect of the arrest had dissipated by the time of the interrogation and was not a factor in obtaining the confession.

Between the time of his arrest and the confession, Mr. Carlow was carefully advised of his *Miranda* rights and chose to waive them; it was not until 10 or 15 minutes into the interrogation he admitted his sexual contacts with the girls. Prior to this time, he spoke freely with the officers, only denying the alleged incidents. Under these circumstances, it is impossible to say that "but for" the arrest, the confession would not have been obtained. *Byers*, at 7–8; *State v. Roth*, 30 Wn. App. 740, 745–46, 637 P.2d 1013 (1981), *review denied*, 97 Wn.2d 1013 (1982).

The record shows the State's cross appeal is not moot, nor is the stipulation to the dismissal necessarily inconsistent with the State's position in appealing the order. By sustaining the defendant's objection, the trial court effectively refused to rule on the issue of sexual psychopathy, despite the mandatory language of RCW 71.06.060. *See State v. Huntzinger,* 92 Wn.2d 128, 133, 594 P.2d 917 (1979). The court left the State with no other choice but to seek review.

■ The court's refusal of the State's evidence is inconsistent with the requirements of RCW 71.06. Only the prosecutor may initiate sexual psychopathy proceedings. *State v. Osborn,* 87 Wn.2d 161, 550 P.2d 513 (1976). The defendant's opposition to the proceedings should not serve as a basis for cutting short those proceedings particularly when, as here, he consented to the evaluation. *Accord, Osborn,* at 168–69. The trial court should have allowed the State's evidence and then determined whether Mr. Carlow was a sexual psychopath; if so, it should have committed him. *State v. Huntzinger, supra; State v. Bunich,* 28 Wn. App. 713, 717, 626 P.2d 47, *review denied,* 95 Wn.2d 1024 (1981). Then, if the Department of Social and Health Services reaffirmed the previous decision he was not amenable to treatment in any available program, the court could then have committed him to prison under the sentence imposed. RCW 71.06.091; *State v. Daniels,* 31 Wn. App. 234, 238–39, 639 P.2d 880 (1982).

The conviction is affirmed; the order of commitment is reversed, and the case remanded to the trial court for hearing of appropriate orders consistent with the provisions of RCW 71.06.

THOMPSON, J., concurs.

McINTURFF, A.C.J. (dissenting)—I respectfully dissent. The real issue here is whether the law remains as it is set forth in *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) and *State v. Byers,* 88 Wn.2d 1,

559 P.2d 1334 (1977), *overruled in nonpertinent part in State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984).

*Payton,* 100 S. Ct. at 1388, holds that law enforcement officers must have a warrant to arrest a defendant in his residence. The majority argues that the record supports the Superior Court's determination that Mr. Carlow was under arrest on his porch. But the record indicates that before entering his house, the police told Mr. Carlow only that they wanted to talk to him at the station about a serious matter. This statement was insufficient to advise Mr. Carlow that he was in custody. *Cf. State v. Holeman,* 103 Wn.2d 426, 428, 693 P.2d 89 (1985) (a person is under arrest for constitutional purposes when, by a show of authority, his freedom of movement is restrained). Mr. Carlow was not arrested until the police formally advised him of that fact after following him into his residence. This warrantless arrest violated the Fourth Amendment.

Since the arrest was unlawful, Mr. Carlow's subsequent confession must be excluded unless it was obtained "by means sufficiently distinguishable to be purged of the primary taint" of the arrest rather than "by the exploitation of that illegality", *Byers,* at 8 (quoting from *Wong Sun v. United States,* 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)). *See also State v. Chrisman,* 94 Wn.2d 711, 718, 619 P.2d 971 (1980), *rev'd on other grounds,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982), *adhered to on remand,* 100 Wn.2d 814, 676 P.2d 419 (1984); *State v. Lewis,* 19 Wn. App. 35, 40–41, 573 P.2d 1347 (1978); *State v. Bryan,* 40 Wn. App. 366, 370 n.1, 698 P.2d 1084 (1985).

The goal of the exclusionary rule is to deter police infringements on Fourth Amendment protections by prohibiting the use of evidence gained through an illegal arrest or search. *Wong Sun,* 83 S. Ct. at 416. That goal is not furthered where "the causation factor of the illegal detention . . . has been so attenuated, as not to have been an operative factor" in securing the evidence. *State v. Vangen,* 72 Wn.2d 548, 555, 433 P.2d 691 (1967) (quoting *State v. Traub,* 151 Conn. 246, 250, 196 A.2d 755 (1963)). Here,

however, the causal chain is short and unbroken. As in *Byers,* there was no significant intervening event or considerable lapse of time between the arrest and Mr. Carlow's confession.[4] Thus, "[t]here [is] no basis for segregating the two, no justification for upholding the one while denouncing the other." *Byers,* at 8.

The majority focuses on facts which it believes establish the voluntariness of Mr. Carlow's confession: *i.e.,* he was predisposed to talking to the officers, and he was advised of his *Miranda* rights. The fact Mr. Carlow was advised of his *Miranda* rights is important, but it is not the only factor the court considers in these situations. *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, 2261 (1975). In both *Byers* and *Brown,* the defendants' convictions were reversed on the ground that their confessions were tainted, although made following *Miranda* warnings which advised them they had a right to refuse to talk to the police. There, the courts relied on the facts that the defendants confessed within 2 hours of their illegal arrests and that no significant events intervened between the arrests and the confessions. *Byers,* at 9; *Brown,* 95 S. Ct. at 2262. Likewise, Mr. Carlow was transported to the police station immediately following his arrest and questioned as soon as he arrived at the station.

Nor is the fact Mr. Carlow was predisposed to talking to the officers helpful. The voluntariness of Mr. Carlow's confession "does not affect the issue here, the *Fourth* Amendment question of whether a confession is a 'fruit of the poisonous tree'" rooted in the arrest. *Byers,* at 7. Whether

---

[4]An example of a significant intervening event is found in *Wong Sun,* 371 U.S. at 491, where the defendant was released on his own recognizance between his illegal arrest and his confession and several days elapsed between the two. *See also United States v. Owen,* 492 F.2d 1100, 1107 (5th Cir. 1974) (defendant released on bail, returned voluntarily 4 days later to give statement); *Commonwealth ex rel. Craig v. Maroney,* 348 F.2d 22, 29 (3d Cir. 1965) (5 days elapsed between arrest and confession and the defendant spoke with his attorney before the confession); *State v. Vangen, supra* at 555 (defendant was confronted with legally seized evidence against him after first refusing to confess). No comparable events occurred between the illegal arrest and Mr. Carlow's confession.

or not Mr. Carlow spoke to the officers voluntarily, his confession was clearly born of his arrest, and therefore must fall with it.

In view of the foregoing, I would hold Mr. Carlow's confession was tainted by his illegal arrest and should not have been admitted at his trial.