[No. 26624-2-I.   Division One.   June 15, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. SCOTT CARL SOLBERG, *Appellant.*

*Jeffrey Steinborn* and *Kenneth R. Friedman,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Bannon, Deputy,* for respondent.

KENNEDY, J. — Appellant Scott Solberg appeals from his conviction of one count of violation of the Uniform Controlled Substances Act (possession of marijuana with intent to manufacture or deliver, RCW 69.50.401). Specifically, Solberg alleges that he was unlawfully arrested, that his residence was unlawfully seized, that the search warrant was based on illegally obtained evidence and insufficient evidence of probable cause, and that the trial court erred in imposing an exceptional sentence following his conviction. We affirm the conviction; however, we reverse the exceptional sentence and remand for resentencing within the standard range.

## I

The following facts are taken from the testimony at Solberg's suppression hearing. On April 27, 1989, Seattle

Police Officer Dennis Brown received an anonymous telephone call from a woman who identified herself as a real estate agent. This woman told Officer Brown that, while she was showing Solberg's residence to a prospective buyer, she was unable to show the basement because it was locked. She also stated that she smelled a strong odor of marijuana at the residence.

The following day, April 28, Officers Paulsen and Brown went to Solberg's residence to investigate the anonymous tip. Both Officer Paulsen and Officer Brown testified that upon leaving their car, they smelled marijuana. They also noticed that the east side of the house was mildewed, the paint was peeling off of the house,[1] and several of the basement windows were blackened.

Based on what they had smelled and seen, Officers Paulsen and Brown executed an affidavit to Seattle City Light to obtain the power consumption records for Solberg's residence. An official at Seattle City Light told them that the power consumption records were consistent with the operation of four or five halide grow lamps. Officer Brown testified that, at this point, he felt they had probable cause to secure a search warrant. We agree.

Officers Paulsen and Brown then returned to Solberg's residence for a detailed description of the house for the search warrant. When they arrived at the house, they noticed a van in the driveway that had not been there before. Because the officers were worried that Solberg might be dismantling the grow farm,[2] they decided to approach the house before securing a search warrant.

The officers knocked on the door, and Edward Bowley, a codefendant, answered and stepped out onto the porch. Officer Brown told Bowley that they were "investigating a

---

[1]Officer Brown testified that peeling paint is common with grow farms because of the humidity that is necessary to grow marijuana.

[2]At the time of their earlier visit, the officers had identified themselves as police officers to Solberg's neighbor and they had observed Solberg's residence from the neighbor's yard.

possible grow farm here, and we're going to get a search warrant, but before we do anything or ask any questions, we're going to read you your Miranda Rights." At this point, Solberg joined Bowley and the officers on the porch. Officer Brown then read Solberg and Bowley their *Miranda* rights.[3] Officer Paulsen said that he suspected four or five halide grow lamps, and Solberg responded, "No, I have four".

Other officers arrived at the residence to wait with Solberg and Bowley while Officers Paulsen and Brown left to secure a search warrant. During the 3 hours it took to secure a search warrant, Solberg and Bowley were not allowed to leave the premises. Although the testimony at the hearing was conflicting, the trial court found on substantial evidence that the officers did not enter or search the house until Officers Paulsen and Brown returned with the search warrant.

A search of the residence revealed 496 marijuana plants, 473 grams of cut marijuana, halide lamps, transformers, timers and other items necessary for grow farms.

Solberg moved to suppress the evidence found during the search on the basis that he was unlawfully arrested, that his residence was unlawfully seized and that the affidavit in support of the search warrant lacked probable cause. The court found that Officers Paulsen and Brown had probable cause to arrest Solberg, thus, the court held that Solberg was lawfully arrested. The court also found that, during the 3-hour wait for the search warrant, the house had not been seized. Finally, the court found that before the search warrant was obtained, no officers entered the house, that the search pursuant to the search warrant was lawful and that the affidavit in support of the search warrant contained probable cause. The court therefore refused to suppress the marijuana and other evidence found in Solberg's house.

Solberg waived his right to a jury trial and the court found him guilty of the crime charged.

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

## II

### A. Warrantless Arrest

Solberg first argues that he was unlawfully arrested. Solberg contends that even if the police had probable cause to arrest him, absent a warrant or exigent circumstances, the arrest was unlawful because he was arrested in his home.

■ Both the Fourth Amendment and article 1, section 7 of the Washington Constitution provide significant constitutional safeguards to individuals in their homes. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). In *Payton*, the Supreme Court held that, absent consent or exigent circumstances, the Fourth Amendment prohibits the warrantless entry into an individual's home to make a felony arrest even though probable cause exists to arrest the individual. 445 U.S. at 587-88; *State v. Holeman*, 103 Wn.2d 426, 429, 693 P.2d 89 (1985) (applying the same rule to Const. art. 1, § 7).

The initial issue in the instant case is whether Solberg was arrested in his home. The State argued below, and seems to be arguing on appeal, that because Officers Paulsen and Brown read Solberg his rights on his porch, Solberg was not arrested in his home.

In *State v. Carlow*, 44 Wn. App. 821, 723 P.2d 522 (1986), two police officers went to the defendant's home, without a warrant, to question him. They knocked on the door and the defendant answered and stepped out onto the porch. At this point, the officers arrested the defendant. On appeal, the court upheld the validity of the arrest without a warrant on the basis that the defendant was arrested outside of his home, that is, while on the porch of his home.[4] 44 Wn. App. at 826.

In *Holeman*, however, the defendant was arrested, without a warrant, while standing in the doorway of his home. On

---

[4]One member of the *Carlow* panel dissented on the basis of evidence that Carlow was arrested inside his home by an officer who followed him into the house. 44 Wn. App. at 828 (McInturff, A.C.J., dissenting).

appeal, the court held that the arrest was unlawful as the defendant was arrested in his home without a warrant and absent exigent circumstances. 103 Wn.2d at 429. The court explained:

It is no argument to say that the police never crossed the threshold of David's house. It is not the location of the arresting officer that is important in determining whether an arrest occurred in the home for Fourth Amendment purposes. Instead, the important consideration is the location of the arrestee. *United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984); *United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980), *cert. granted*, 454 U.S. 814 (1981), *aff'd*, 457 U.S. 537 (1982). A person does not forfeit his Fourth Amendment privacy interests by opening his door to police officers. *State v. Counts*, 99 Wn.2d 54, 659 P.2d 1087 (1983). A person's home can be invaded to the same extent when the police remain outside the house and call a person to the door as when the police physically enter the household itself. Our state constitution guarantees that

No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

Const. art. 1, § 7. Here the police did not have the proper authority of law, *i.e.*, a warrant. Consequently, this first arrest of David was unlawful.

103 Wn.2d at 429.

■ Here, the officers knocked on the door and Bowley answered and stepped onto the porch. When Solberg heard that police were at the door, he joined Bowley and the officers on the porch. When both Solberg and Bowley were on the porch, it is uncontested that the officers placed them under arrest. On the basis of *Holeman*, we hold that the arrest took place in Solberg's home and we reject the premise that an otherwise invalid warrantless arrest may become valid depending upon whether a suspect steps out onto his or her porch when answering the door as opposed to remaining standing in the doorway of his or her home. To distinguish between one's home and the porch of one's home for Fourth Amendment purposes is artificial in a case such as this where the police knock on the door and ask to speak to the occupants of the home.[5] As stated by the court in

---

[5]The requirement that the police obtain a warrant before arresting a person in his home for a routine felony absent exigent circumstances is not simply an

*Holeman*, "[a] person's home can be invaded to the same extent when the police remain outside the house and call a person to the door as when the police physically enter the household itself." 103 Wn.2d at 429.

To lawfully arrest a suspect in his home for a routine felony, the police must have a warrant or there must be exigent circumstances for the arrest to be valid. *Holeman*, 103 Wn.2d at 429; *see also State v. Ramirez*, 49 Wn. App. 814, 818, 746 P.2d 344 (1987) (noting that, absent consent or exigent circumstances, the constitution prohibits "the warrantless entry into an individual's home in order to make a felony arrest even though probable cause exists to arrest the individual therein"). Here, it is undisputed that Officers Paulsen and Brown did not have a warrant nor does the State allege that there were exigent circumstances.[6] Thus, we hold that, even though the police had probable cause to arrest Solberg, without a warrant or exigent circumstances, Solberg was unlawfully arrested.[7]

---

administrative inconvenience. It is a fundamental constitutional right which the police may not sidestep by inviting or directing a resident to step out onto the porch or by taking advantage of the situation if the resident happens to step out onto the porch. Here, there was testimony by Officer Brown that these officers routinely approach residents' doors before they obtain a search warrant. We do not approve of this conduct.

[6]Apparently, it takes 3 to 5 hours to dismantle a grow operation the size of Solberg's. It was argued below that the police could have kept Solberg's residence under surveillance while waiting for the warrant to arrive.

[7]At the suppression hearing, the record reflects that the court did not address the issues of whether Solberg was in fact arrested in his home and whether the police lawfully arrested Solberg in his home without a warrant. Rather, the court found that the arrest was valid because the police had probable cause. When the court did not rule on these issues, defense counsel noted that the court failed to consider *Payton* which provides that the police may not arrest a suspect in his home without a warrant absent exigent circumstances. The court responded, "I was not aware that there was a case on that issue. If I am incorrect . . . I will give you both an opportunity to give me a brief and argue that issue." The record, however, does not contain any briefing on that issue or any subsequent rulings by the court on that issue.

## B. Warrantless Securing of Solberg's House

Solberg next argues that the police unlawfully seized his residence for 3 hours while waiting for a search warrant.[8] Solberg contends that, because the police did not have a warrant and because exigent circumstances did not exist, the seizure was unlawful.

■ ■ A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). Impoundment of a room or securing of a house constitutes a seizure under the Fourth Amendment. *State v. Ng*, 104 Wn.2d 763, 770, 713 P.2d 63 (1985); *State v. Bean*, 89 Wn.2d 467, 472, 572 P.2d 1102 (1978). Here, the officers clearly secured Solberg's house until a search warrant was obtained; backup was called in to watch the house and Solberg and Bowley were kept on the porch and were not allowed unfettered access to the house nor were they allowed to leave the premises. Although the trial court found that the officers never entered the house, such restrictions on Solberg's possessory interest in the house is a meaningful interference which constitutes a seizure.

Whether the seizure was lawful is another question. Solberg argues that a warrantless seizure is unlawful absent exigent circumstances. Because it is undisputed that exigent circumstances did not exist, Solberg argues that the seizure was unlawful.

In *Bean*, the court found the securing of a house an unlawful seizure where the officers *entered the house* absent exigent circumstances while waiting for a search warrant. *Bean*, 89 Wn.2d at 473-74.[9]

---

[8]The trial court found that there was a seizure of the persons in the house but not a seizure of the house itself.

[9]*See also United States v. Timberlake*, 896 F.2d 592, 597-98 (D.C. Cir. 1990) (holding warrantless entry and search of house unlawful where exigent circumstances did not exist); *United States v. Rosselli*, 506 F.2d 627, 630-31 (7th Cir. 1974) (holding warrantless entry and search of house unlawful where exigent circumstances did not exist).

In *Segura v. United States*, 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984), the police entered an apartment without a warrant, arrested the occupants, and remained in the apartment for 19 hours until a search warrant was secured. Five members of the Court refused to suppress evidence obtained before the warrant was secured and evidence obtained pursuant to the warrant holding that,

> where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here involved, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures.

(Footnote omitted.) *Segura*, 468 U.S. at 798.

This holding was elaborated on in a portion of the opinion joined by only two Justices. These two members distinguished between searches and seizures, stating that a seizure affects an individual's possessory interests whereas a search affects an individual's privacy interests. *Segura*, 468 U.S. at 806. The Justices reasoned that heightened protection afforded privacy interests "is simply not implicated where a *seizure* of premises, not a search, is at issue."[10] *Segura*, 468 U.S. at 810. The Justices further reasoned that the initial entry, whether legal or illegal,

> does not affect the reasonableness of the seizure. Under either method — entry and securing from within or a perimeter stakeout — agents control the apartment pending arrival of the warrant; both an internal securing and a perimeter stakeout interfere to the same extent with the possessory interests of the owners.

*Segura*, 468 U.S. at 811.[11] Because the owners were under arrest, concluded the Justices, the interference with their

---

[10] These two members noted that "[t]he Court has not had occasion to consider whether, when officers have probable cause to believe that evidence of criminal activity is on the premises, the temporary securing of a dwelling to prevent the removal or destruction of evidence violates the Fourth Amendment." *Segura*, 468 U.S. at 809.

[11] The Justices did acknowledge that, absent exigent circumstances, the initial entry might constitute an illegal search, however, that had nothing to do

possessory interests in the apartment was "virtually non-existent". *Segura*, 468 U.S. at 813.

Four members of the Court dissented, arguing that the occupation was an unreasonable search under the Fourth Amendment as it infringed on the occupants' reasonable expectation of privacy. *Segura*, 468 U.S. at 820. The dissenters also argued that occupation was an unreasonable seizure under the Fourth Amendment as it interfered with the occupants' possessory interests. *Segura*, 468 U.S. at 822. The dissenters asserted that "this seizure was constitutionally unreasonable from the moment it began. It was conducted without a warrant and in the absence of exigent circumstances." *Segura*, 468 U.S. at 824.

In a footnote, however, the dissenters stated that,

> [s]ince these premises were impounded "from the inside," I assume impoundment would be permissible even absent exigent circumstances when it occurs "from the outside" — when the authorities merely seal off premises pending the issuance of a warrant but do not enter.

*Segura*, 468 U.S. at 824 n.15.

In his treatise,[12] Professor LaFave concludes that, in *Segura*,

> the Court has only said that the *seizure* aspect (which, were it to exist in isolation, would mean maintaining control without entry) is permissible on probable cause even if there are not exigent circumstances. The four dissenters seem to agree on that narrow point, . . .

Professor LaFave continues on to state that if, however,

> the police make a physical entry into the premises in order to effectuate the impoundment, then there has been *both* a seizure and a search. The Court in *Segura* unquestionably thinks so, as in distinguishing the two concepts the Court says that a seizure "affects only the person's possessory interests" while a search "affects a person's privacy interests." An entry made to impound certainly intrudes upon privacy interests, and thus must be characterized as a search under the Court's definition. The *Segura* dissenters are of the same view, for they note

---

with the seizure as the interference with the possessory interests was no greater than had the officers conducted a perimeter stakeout. *Segura*, 468 U.S. at 812-13.

[12]2 W. LaFave, *Search and Seizure* (2d ed. 1985).

that the "physical entry" constituted an "invasion of privacy" which was "exacerbated" by the continued occupation of the premises. The dissenters go on to say that this was an unreasonable search because, as the district court concluded, "no exigent circumstances justified the agents' initial warrantless entry." *The opinion of the Court never suggests otherwise,* for it is there acknowledged that "absent exigent circumstances, the entry may have constituted an illegal *search.*"

(Footnote omitted.) 2 W. LaFave, *Search and Seizure* § 6.5(c), at 675-76 (2d ed. 1985).

In ·*State v. Ng,* 104 Wn.2d 763, 713 P.2d 63 (1985), the police went to the defendant's girl friend's parents' house to arrest him. While arresting the defendant in his bedroom, the police noticed several guns and a stack of money in the bedroom. The police sealed the room, stationed an officer outside the door, and allowed no one to enter the room until a search warrant was obtained.[13] On appeal, the defendant argued that the impoundment of his room constituted an unreasonable seizure.

The court, relying on *Segura,* upheld the seizure of the bedroom reasoning, because the police did not enter the bedroom during the impoundment, the bedroom was seized from the outside. *Ng,* 104 Wn.2d at 771.

Therefore, under the *Segura* analysis, the police needed only probable cause to impound the bedroom while a warrant was being secured. Because probable cause clearly existed and the warrant was obtained expeditiously, the seizure was reasonable.

*Ng,* 104 Wn.2d at 771.

Here, the trial court found that none of the officers actually entered the residence before the search warrant was obtained and the warrant was obtained within 3 hours of securing the house. The record also reflects that the officers clearly had probable cause to secure the residence from the outside; the officers had earlier that day smelled marijuana as soon as they stepped out of their vehicle at Solberg's house, the officers noticed that the basement windows had been blacked out and that mildew had accumu-

---

[13]A warrant was obtained approximately 7½ hours after the initial entry.

lated on the side of the house "consistent with a marijuana grow operation", and the officers, through the proper procedure, obtained power consumption records for Solberg's residence and discovered that the high consumption was consistent with four or five grow lamps operating. Thus, on the basis of *Segura* and *Ng*, we hold that the residence was lawfully seized.[14]

## C. Probable Cause

Solberg next contends that the affidavit supporting the search warrant does not establish probable cause.

■■ Solberg first objects to Officer Paulsen's recordation, in the affidavit in support of the warrant, of Solberg's statement that "there were only 4 lamps. The subject SOLBERG added that money was tight and he needed a supplement to his income." Because we have concluded that Solberg's arrest was unlawful, Solberg's self-incriminating statement made following his unlawful arrest should have been excised from the affidavit on which the search warrant was based. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

> A search warrant based upon an affidavit containing illegally obtained information is not rendered invalid, however, if the affidavit contains otherwise sufficient facts to establish probable cause independent of the illegally obtained information.

*State v. Maxwell*, 114 Wn.2d 761, 769, 791 P.2d 223 (1990); *see also State v. Coates*, 107 Wn.2d 882, 888, 735 P.2d 64 (1987).

■■ An affidavit establishes probable cause if it sets forth "facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity.' " *Maxwell*, 114 Wn.2d at 769 (quoting *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986)). If information supplied by an informant does not establish probable cause, probable cause may be established by an independent police investigation. *Maxwell*, 114 Wn.2d at 769. "The investigation must point to

[14]*See also United States v. Suarez*, 902 F.2d 1466, 1468 (9th Cir. 1990) (relying on *Segura* to note that the officers could have secured the defendant's apartment from the outside until they obtained a warrant).

suspicious activities or indications of criminal activity along the lines suggested by the informant." *Maxwell*, 114 Wn.2d at 769. Finally, a reviewing court must accord great deference to the magistrate's determination of probable cause. *Coates*, 107 Wn.2d at 888. "Doubts should be resolved in favor of the warrant's validity." *State v. Wilke*, 55 Wn. App. 470, 476, 778 P.2d 1054, *review denied*, 113 Wn.2d 1032 (1989).

■ Here, the affidavit states that Officer Paulsen smelled marijuana as soon as he stepped out of his vehicle at Solberg's house. An affidavit stating that marijuana had been observed at a particular location "must include a showing that the observer had the necessary skill, training or experience to identify the plants." *State v. Wilke*, 55 Wn. App. at 476. Here, the affidavit states that Officer Paulsen recognized the smell of marijuana "due to it's [*sic*] distinctive odor from past arrests and controlled substance training."

The affidavit further states that the windows had been blacked out and that mildew had accumulated on the side of the house "consistent with a marijuana grow operation".

Moreover, the officers, through the proper procedure, obtained power consumption records for Solberg's residence and discovered that the high consumption was consistent with four or five lamps operating.

■ Although increased power consumption alone is insufficient to confirm a tip that criminal activity is being conducted, increased power consumption can serve to corroborate a tip by an informant. *State v. Dice*, 55 Wn. App. 489, 494, 778 P.2d 531 (1989). Here, not only was the informant's "tip" corroborated by the increased power consumption, the tip was also corroborated by the smell of marijuana, the blacked out windows and the moisture on the side of the house. We therefore hold that the affidavit contains sufficient facts to establish probable cause independent of Solberg's statement following his illegal arrest.[15]

---

[15]We also note that below, the trial court excised from the affidavit a statement by Officer Paulsen that "on 04-27-89, your affiant was contacted by a Real Estate agent" because it was Officer Brown, not Officer Paulsen, who spoke with the agent. We conclude that the affidavit, without this statement, contains

### D. Exceptional Sentence

Solberg's final argument is that his exceptional sentence is not supported by adequate findings. The standard range for Solberg's crime was 30 to 90 days. The court imposed an exceptional sentence of 6 months followed by 240 hours of community service.

A reviewing court will reverse a sentence outside the standard range if: (a) the reasons supplied by the sentencing judge are not supported by the record which was before the judge or the reasons do not justify a sentence outside the standard range for that offense; or (b) the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A.210(4); *see also State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991); *State v. Batista*, 116 Wn.2d 777, 792, 808 P.2d 1141 (1991).

The determination of whether the record supports the sentencing judge's reasons is a factual determination and is reviewed under the "clearly erroneous" standard. *Grewe*, 117 Wn.2d at 218. An appellate court will reverse only if no substantial evidence supports the sentencing judge's conclusions. *Grewe*, 117 Wn.2d at 218. The determination of whether the reasons justify a sentence outside the standard range is reviewed under the "matter of law" standard. *Batista*, 116 Wn.2d at 792. Finally, the determination of whether the sentence was clearly excessive or clearly too lenient is reviewed under the "abuse of discretion" standard. *Batista*, 116 Wn.2d at 792.

In the instant case, Solberg challenges whether the reasons cited by the trial court justify a sentence outside the standard range; thus, we will review the reasons under the "matter of law" standard of review.

The trial court cited the following reasons in support of the 6-month exceptional sentence:

---

sufficient probable cause. Further, although the State did not cross-appeal this ruling, we are not convinced that the minor error as to with which of the two officers the informant spoke justified excising the statement. The officers were together when the anonymous "tip" was received and the record reflects that the officers immediately discussed the information that had been received.

1. This grow operation involved 496 marijuana plants: 311 were mature plants, 185 were starter plants.
2. This offense involved a high degree of sophistication in terms of time and effort and a substantial financial investment for the equipment and power necessary for the operation.
3. The estimated market value of the plants being grown is between $15,000 - $400,000.
4. There was evidence of the defendant's involvement in retail or wholesale sales of marijuana to supplement his income.

RCW 9.94A.390(2)(d)(v) provides as an aggravating circumstance that "[t]he current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time or involved a broad geographic area of disbursement".

In *State v. Shupe*, 55 Wn. App. 588, 590, 779 P.2d 270 (1989) (quoting *State v. Payne*, 45 Wn. App. 528, 531, 726 P.2d 997 (1986)), this court stated that "[t]he sophistication of an operation may justify an exceptional sentence if it is 'of a kind not usually associated with the commission of the offense in question.' " The court then found that the defendant's grow operation, which involved 61 mature marijuana plants and three halide grow lights, was not any larger nor any more sophisticated than the average grow operation. *Shupe*, 55 Wn. App. at 590.

Here, nothing in the record establishes that this grow operation is more sophisticated or larger than the average indoor grow operation. As noted by this court in *Shupe*, "[w]hen appellant's operation is compared with those described in numerous Washington cases, [appellant's] operation appears rather typical." (Footnote omitted.) *Shupe*, 55 Wn. App. at 590.[16] In addition, the trial court's finding that the crop was

---

[16]In a footnote, the *Shupe* court cited the following cases for the proposition that Shupe's operation was typical when compared with other cases:

*State v. Murray*, 110 Wn.2d 706, 757 P.2d 487 (1988); *State v. Casal*, 103 Wn.2d 812, 699 P.2d 1234 (1985); *State v. Cord*, 103 Wn.2d 361, 693 P.2d 81 (1985); *State v. Berlin*, 46 Wn. App. 587, 731 P.2d 548 (1987); *State v. Sterling*, 43 Wn. App. 846, 719 P.2d 1357, *review denied*, 106 Wn.2d 1017 (1986); *State v. Christiansen*, 40 Wn. App. 249, 698 P.2d 1059 (1985); *State v. McPherson*, 40 Wn. App. 298, 698 P.2d 563 (1985); *State v. Smith*, 39 Wn. App. 642, 694 P.2d 660 (1984), *review denied*, 103 Wn.2d 1034 (1985).

*Shupe*, 55 Wn. App. at 590 n.3.

worth between $15,000 and $400,000 is too broad a range to support a finding that this grow operation was more sophisticated or larger than usual. That appellant was involved in retail or wholesale sales of marijuana to supplement his income, standing alone, is not a sufficient basis upon which to conclude as a matter of law that the current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time or involved a broad geographical area of disbursement. Accordingly, we reverse and remand for resentencing within the standard range.

BAKER, J., concurs.

PEKELIS, J. (concurring) — I concur in the result, but write separately because I do not agree that Solberg's arrest was unlawful. The majority does not dispute that there was probable cause to arrest Solberg, but because it contends that the arrest took place in his home, concludes that a warrant was required. I do not agree that the arrest here took place in Solberg's *home*.

It is undisputed that while the police officers were talking to Bowley on the porch, Solberg decided to come out and join them. It was not until Solberg exited the house and came out on the front porch that he was arrested. While in *State v. Holeman*,[17] the defendant remained standing in the doorway, Solberg crossed the threshold voluntarily and came out on the porch. It was not until he did so that he was placed under arrest. I would conclude, as did the majority in *State v. Carlow*,[18] that a warrantless arrest on a person's porch is proper.

Review granted at 120 Wn.2d 1019 (1993).

---

[17]103 Wn.2d 426, 693 P.2d 89 (1985).

[18]44 Wn. App. 821, 723 P.2d 522 (1986).