[Nos. 20234-8-III; 20235-6-III. Division Three. October 15, 2002.]

THE STATE OF WASHINGTON, *Respondent,* v. GREG RYAN SMITH, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DINA SMITH, *Appellant.*

*Richard L. Bechtolt, Jr.*; *Garth L. Dano* (of *Garth Dano & Associates*); and *Robert E. Schiffner*, for appellants.

*John D. Knodell, Prosecuting Attorney*, and *Edward A. Owens, Deputy*, for respondent.

KURTZ, J. — While standing on adjoining property, Deputy Nick Dirks viewed a patch of marijuana plants growing on property occupied by Greg and Dina Smith. Later, Deputy Dirks, accompanied by two other officers, went to the Smith residence to request permission to search the property. When no one answered the door, Deputy Dirks left to obtain a search warrant while the other officers remained behind to secure the property; several other officers also arrived on

the scene. While waiting for Deputy Dirks to return, officers walked about the property but did not enter the marijuana patch. When Deputy Dirks returned with a search warrant, marijuana plants were seized from the property and from inside the residence. The Smiths were charged with a violation of the Uniform Controlled Substances Act and manufacturing marijuana. The Smiths appeal their convictions, contending the trial court erred by failing to suppress the evidence seized during the search of the property and the house.

Although we conclude that the officers' intrusions on the property constituted an unreasonable search, we hold that suppression was not required because the evidence would have been subject to seizure as part of the search pursuant to a valid warrant. We affirm the Smiths' convictions.

## FACTS

On August 1, 2000, Deputy Nick Dirks of the Grant County Sheriff's Office met with an employee of Radach Farms to investigate a confidential informant's tip concerning a marijuana grow operation on private property adjoining a Radach Farm alfalfa field. After receiving permission from Mr. Radach to enter the alfalfa field, Deputy Dirks drove down Road O northeast to reach the field. Deputy Dirks then exited his patrol car and walked through the alfalfa field to a point where he found a break in the hedge sufficient to allow him to view the adjoining property.

From his viewpoint in the Radach alfalfa field, Deputy Dirks was able to see what he believed to be 30 to 40 marijuana plants growing approximately 15 to 20 feet away. Based on the information he received from the confidential informant and Mr. Radach, Deputy Dirks believed that marijuana plants were growing on private property occupied by Dina and Greg Smith.

Later that morning Deputy Dirks and two other deputies returned to the Radach alfalfa field. Both of these officers confirmed Deputy Dirks' assessment that approximately 30

to 40 marijuana plants were growing on the adjoining property. The deputies then decided to contact someone at the residence on the property where the marijuana was growing to ask for permission to search both the residence and the property. The three deputies approached the residence by walking down the driveway leading to the residence. The driveway starts at the road and terminates at the carport adjacent to the residence. The deputies knocked at the door, but were unable to contact anyone. They then retreated back to the driveway in the most direct route.

The deputies then returned to their car and phoned Sergeant Richard Watson. Deputy Dirks left to apply for a search warrant for the property and the two other deputies remained at the property. After Deputy Dirks left, Brandy B. McDarment arrived by car and informed the remaining deputies that she did not live at the residence but that she was there to visit her daughter, Dina Smith. Ms. McDarment was accompanied by Detective Matthew Messer to see the marijuana and its location. Detective Messer took Ms. McDarment to the edge of the weed patch where the marijuana was growing and showed her the marijuana plants. They did not enter the area where the marijuana was growing.

Ms. McDarment was not arrested and was allowed to stay on the property—but she was not allowed to roam about unless she was with an officer. Ms. McDarment sat down in a chair on the front yard of the residence where she could see the location where the marijuana was growing. She also observed officers walk around the property and up to, but not into, the edge of the patch where the marijuana was growing. At no time did Ms. McDarment observe any officer go into the patch where the marijuana was growing, nor did she observe any officer pull any marijuana plants from the field prior to the arrival of the search warrant.

At various times, Sergeant Watson, along with Detectives J. Perez, J. Wade, and Sergeant Karl Karlsson, as well as other deputies, arrived at the location to assist in executing the anticipated search warrant. While waiting for the

search warrant to arrive, the officers walked about the property and walked up to the edge of the patch where the marijuana was growing to observe the plants. Officers did not enter the marijuana patch or pull up any marijuana plants until after the officer arrived at the residence with the search warrant.

At 3:05 P.M., a judge signed the search warrant for the premises. At 3:09 P.M., Deputy Dirks left the courthouse en route back to the residence. Once leaving the courthouse, Deputy Dirks notified Sergeant Watson via cell phone that he had a signed search warrant and was on his way back to the residence. The distance from the Smith residence to the courthouse is approximately 25.5 miles. Deputy Dirks arrived at the residence with the search warrant at approximately 3:38 P.M.

At approximately 3:45 P.M., a videotape was started showing the first marijuana plants being pulled by the officers. Prior to the taping, the officers took still photographs of the area, the house exterior, and the growing marijuana. Shortly after the tape was started, the Smiths arrived at their residence and were arrested by law enforcement officers after the search warrant was read to them and served. The search warrant resulted in the seizure of 90 marijuana plants from the area outside the residence and approximately 35 marijuana plants from inside the residence.

Based on these undisputed facts, the court denied the Smiths' motion to suppress the evidence obtained during the search. The court concluded that there was a lawful observation of the patch where the marijuana was growing and there was initially a lawful intrusion onto the property limited to those areas impliedly open to the public, i.e., the driveway as far west as the front door, a path to the front door, and the front porch. The court also determined that the search warrant was sought on the basis of the observations from the field.

Significantly, the court also determined that before the search warrant was obtained, there were unlawful intru-

sions onto a portion of the property not impliedly open to the public. The court further concluded that these unlawful intrusions were for the purpose of observation only and that the observation constituted a search, not a seizure. Observing that the search was fruitless, the court stated it "added nothing to the observations lawfully made, was not exploited in any way, and resulted in no greater intrusion into the Defendant's property and private affairs than that lawfully made."[1] The court found that the unlawful intrusions were "irrelevant to the process of obtaining the initial observation, obtaining the warrant, and serving the warrant."[2] Additionally, the court determined that "[t]he officers who went to observe the marijuana patch did not do so in order to secure the premises, which was amply secured by the officers' presence in the driveway."[3]

After a bench trial on stipulated facts, the Smiths were convicted of a violation of the Uniform Controlled Substances Act and manufacturing marijuana. They appeal, contending the court erred by finding the warrantless search was irrelevant and by failing to suppress the evidence seized during the search.

## ANALYSIS

*Scope of officers' intrusions.* Police officers on legitimate business may enter an area of curtilage which is impliedly open to the public, such as an access route to a house or a walkway leading to a residence. *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). A substantial or unreasonable departure from the area exceeds the scope of the invitation and violates an individual's constitutionally protected expectation of privacy. *Id.* at 903. The determination of whether an officer's presence amounts to an unconstitutional invasion of privacy must be based on all of the facts and circumstances of each case. *Id.*

---

[1] Clerk's Papers (CP) (No. 20234-8-III) at 117; CP (No. 20235-6-III) at 122.

[2] CP (No. 20234-8-III) at 117; CP (No. 20235-6-III) at 122.

[3] CP (No. 20234-8-III) at 117; CP (No. 20235-6-III) at 122.

The State concedes that officers exceeded the scope of the curtilage impliedly open to the public. However, the State argues that these intrusions occurred after the officers had probable cause to request a search warrant. Moreover, the State insists that these intrusions were necessary to secure the property for impoundment purposes until a search warrant was obtained. The State also points out that no information obtained during the intrusions was used to obtain the search warrant.

The trial court concluded that the officers made unlawful intrusions onto portions of the property not open to the public. The trial court also concluded that "[t]he officers who went to observe the marijuana patch did not do so in order to secure the premises, which was amply secured by the officers' presence in the driveway."[4] We agree with these conclusions. Nothing in the record supports the State's argument that the officers' intrusions beyond the area of the curtilage impliedly open to the public was necessary to secure the property. Simply put, the officers here made unlawful intrusions onto portions of the Smith property.

■ *A warrantless search or a warrantless seizure?* A warrantless search of constitutionally protected areas is presumed unreasonable absent proof that one of the few well-established exceptions to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). These exceptions fall into several categories, including consent, exigent circumstances, searches incident to valid arrest, inventory searches, plain view, and *Terry*[5] investigative stops. *Ladson*, 138 Wn.2d at 349. The State bears the burden of proving a warrantless search falls within one of the exceptions. *Id.* at 350; *State v. Johnson*, 128 Wn.2d 431, 451, 909 P.2d 293 (1996).

---

[4] CP (No. 20234-8-III) at 117; CP (No. 20235-6-III) at 122.

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

■ ■ Here, however, the State more or less concedes that none of the exceptions apply to excuse the warrantless intrusions onto the Smith property. Instead, relying on *State v. Solberg*, 66 Wn. App. 66, 831 P.2d 754 (1992), *rev'd on other grounds* (sentencing), 122 Wn.2d 688, 861 P.2d 460 (1993), the State contends the warrantless intrusions constitute a seizure rather than a search.

In *Solberg*, police officers knocked on the door of Mr. Solberg's house as part of their investigation into a suspected marijuana grow operation. Mr. Solberg was arrested while he was being questioned by officers on the front porch of his home. *Solberg*, 66 Wn. App. at 69-70. Officers then remained on the porch with Mr. Solberg for the three hours it took to secure a search warrant. Mr. Solberg was not allowed to leave the premises, but officers remained outside the house prior to serving the warrant. *Id.* at 70. The subsequent search revealed evidence of a marijuana grow operation. *Id.* Mr. Solberg moved to suppress the evidence, contending, in part, that his residence was unlawfully seized. *Id.*

Adopting Professor Wayne LaFave's reading of *Segura v. United States*, 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984), the *Solberg* court concluded that there was a distinction between a seizure and a search in that a search affects a person's privacy rights while a seizure affects only the person's possessory rights. *Solberg*, 66 Wn. App. at 76 (citing 2 Wayne R. LaFave, Search and Seizure § 6.5(c), at 675-76 (2d ed. 1985)). Accordingly, the *Solberg* court determined that the residence was lawfully seized because the officers did not enter the residence before the search warrant was obtained, and the search warrant itself was obtained within three hours of securing the house. *Id.* at 77-78. The court noted that police need only probable cause to impound a room from the outside while a warrant is being secured. *Id.*

An examination of cases dealing with seizures helps to demonstrate the distinction between seizures—which affect possessory interests—and searches—which affect privacy interests. For example, the police in *Solberg* seized the

residence from the front porch and did not enter the home until the warrant was obtained. Similarly, in *State v. Benjamin Kin Ng*, 104 Wn.2d 763, 713 P.2d 63 (1985), police seized a bedroom by stationing an officer outside the bedroom door. Police did not enter the bedroom during the impoundment. *Id.* at 771. In *Segura,* the police entered an apartment without a warrant, but then arrested the owners and remained in the apartment for 19 hours until the search warrant was obtained. A five-justice majority refused to suppress the evidence obtained during the subsequent search. These members of the Court held that the seizure was not unreasonable "where officers, having probable cause, enter premises, and with probable cause, arrest the occupants . . . and, for no more than the period here involved, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant." *Segura,* 468 U.S. at 798.

Examining the privacy interests affected here, the trial court determined that the officers' intrusions constituted a search, not a seizure. We agree. The officers' warrantless entry to those areas beyond the area of the curtilage open to the public violated the Smiths' privacy interests in addition to their possessory interests. Contrary to the arguments advanced by the State, the officers here made no real attempt to seize the Smith property from the outside. Hence, the officers' intrusions constituted an unreasonable warrantless search that was not excused under any of the exceptions to the warrant requirement.

*Was suppression required?* Having determined that the officers' intrusions constituted an unreasonable search, we must next determine whether suppression was required. The trial court concluded that suppression was not required because the search was "irrelevant" and "resulted in no greater intrusion into the Defendant's property and private affairs than that lawfully made."[6]

 Evidence obtained through a source independent of a police error or constitutional violation is not subject to the

---

[6] CP (No. 20234-8-III) at 117; CP (No. 20235-6-III) at 122.

exclusionary rule. *State v. Hall*, 53 Wn. App. 296, 304-05, 766 P.2d 512 (1989) (citing *Murray v. United States*, 487 U.S. 533, 537, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988)). Moreover, contrary to the Smiths' arguments, the independent source doctrine, like the inevitable discovery doctrine, does not offend the protections of article I, section 7 of the Washington Constitution. *State v. Richman*, 85 Wn. App. 568, 576-77, 933 P.2d 1088 (1997); *State v. Ludvik*, 40 Wn. App. 257, 263, 698 P.2d 1064 (1985). Hence, "[e]vidence will not be suppressed if it would have been acquired even without the unlawful activity, or if the causal connection between its acquisition and the unlawful activity is attenuated." *State v. Storhoff*, 84 Wn. App. 80, 83, 925 P.2d 640 (1996) (footnotes omitted), *aff'd*, 133 Wn.2d 523, 946 P.2d 783 (1997).

Even if we assume that the marijuana plants were seized as part of the warrantless entry to the Smith property, these same plants would be subject to seizure as part of the search pursuant to a valid warrant. Suppression is not required under the independent source doctrine.

Citing *Ladson* and *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998), the Smiths assert that suppression is required because article I, section 7 of the Washington Constitution offers greater protections than the Fourth Amendment. These cases address problems with warrantless searches and do not address the independent source doctrine. Moreover, courts in *Richman* (Division One of this court) and *Ludvik* (Division Three of this court) concluded that the independent source doctrine and the inevitable discovery doctrine are consistent with the requirements of the Fourth Amendment and article I, section 7. *Richman*, 85 Wn. App. at 576-77 (inevitable discovery rule); *Ludvik*, 40 Wn. App. at 263 (independent source doctrine). The *Richman* court, examining the tension between privacy rights and the integrity of the truth-finding process, concluded: "[I]t defies logic and common sense to exclude evidence and place the police in a worse position than if no misconduct had taken place." *Richman*, 85 Wn. App. at 577.

The Smiths also contend that suppression is required under *State v. Bean*, 89 Wn.2d 467, 572 P.2d 1102 (1978) and *State v. Ferro*, 64 Wn. App. 181, 823 P.2d 526 (1992). These cases are also distinguishable.

In *Bean*, evidence was obtained pursuant to a warrant after police had lawfully arrested a defendant but unlawfully secured his home. *Bean*, 89 Wn.2d at 471, 473. The officers securing the home observed marijuana and pipes in plain view and informed the officer obtaining the warrant of this discovery. *Id*. at 470. The trial court had suppressed the evidence seized prior to the securing of the warrant. The Washington Supreme Court went further, concluding that the "initial entry into the house was wrongful and the subsequently obtained search warrant was not curative of the original illegal entry." *Id*. at 473. The court's reasoning is not carefully explained, but it appears that the court based its decision on an analysis of the exigent circumstances exception to the warrant requirement—not the application of the independent source doctrine. Moreover, unlike the warrant here, the warrant in *Bean* was issued based, in part, on information obtained during the unlawful entry. Here, the officers roaming about the property did not uncover additional information that was used to obtain the search warrant.

In *Ferro*, officers engaged in aerial surveillance discovered marijuana growing in a wooded area and informed officers on the ground. These officers proceeded to the house near the location of the marijuana. When deputies arrived, one of the deputies got out of the vehicle and spoke to Ms. Ferro, but two other deputies drove across the property and then walked into the woods, and began seizing marijuana plants and placing them in their truck. *Ferro*, 64 Wn. App. at 181-82. In *Ferro*, no warrant was sought, obtained, or served. *Ferro*, like *Bean*, does not involve the application of the independent source doctrine.

In short, the court here did not err by admitting the evidence obtained from the Smith property. We affirm the Smiths' convictions.

SWEENEY and SCHULTHEIS, JJ., concur.

Review denied at 149 Wn.2d 1014 (2003).